Shiloh **STRICKLAND**, Plaintiff,

v.

**PRIME CARE OF DOTHAN,**
Defendant.

No. Civ.A. 99–A–922–5.

United States District Court,
M.D. Alabama,
Southern Division.

Aug. 18, 2000.

Ann C. Robertson, Laura M. Hitt, Birmingham, AL, for plaintiff.

Leslie M. Allen, J. Beth Moscarelli, Montgomery, AL, for defendant.

## MEMORANDUM OPINION AND ORDER

ALBRITTON, Chief Judge.

### I. *INTRODUCTION*

In this pregnancy discrimination suit, the Plaintiff, Shiloh Strickland ("Strickland"), sues her former employer, Prime Care of Dothan ("Prime Care"), on the theory that Prime Care terminated her employment as a medical assistant because of her pregnancy. On July 3, 2000, Prime Care filed a Motion for Summary Judgment (doc. # 21), which raised the sole issue of whether Strickland has sufficient evidence to create an issue of fact on the question of pretext. Because the court disagrees with Prime Care's assertion that there is no triable issue of fact on the question of pretext, the Motion is due to be DENIED.

### II. *SUMMARY JUDGMENT STANDARD*

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

The party asking for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the 'pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Id.* at 323, 106 S.Ct. 2548. The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing, or pointing out to, the district court that the nonmoving party has failed

to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *See id.* at 322–324, 106 S.Ct. 2548.

Once the moving party has met its burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324, 106 S.Ct. 2548. To avoid summary judgment, the nonmoving party "must do more than show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). On the other hand, the evidence of the nonmovant must be believed and all justifiable inferences must be drawn in its favor. *See Anderson v. Liberty Lobby,* 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

After the nonmoving party has responded to the motion for summary judgment, the court must grant summary judgment if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56(c).

### III. *FACTS*

The submissions now before the court establish the following facts:

Prime Care operates two medical clinics, one in Dothan, Alabama and one in Daleville, Alabama. In 1994, Dr. Terry Ullmann ("Ullmann") purchased the clinic from a local hospital and he, along with four other physicians, began a general medical practice. On September 14, 1998, Strickland began working at Prime Care's Dothan Clinic as a medical assistant. As per company policy, Strickland was initially placed in a ninety-day probationary period.

On or about October 21, 1998, Strickland informed Prime Care that she was pregnant. On or about October 29, 1998, Ullmann, Angie Smith ("Smith"), Strickland's immediate supervisor, and Jenny Herring ("Herring"), the director of human resources, met and decided to terminate Strickland. This suit followed.

Additional relevant facts are set out in the court's discussion below.

### IV. *DISCUSSION*

The litigants agree that Strickland must prove her case by circumstantial evidence using the now familiar *McDonnell Douglas* burden shifting framework. *See McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973); *Eskra v. Provident Life & Accident Ins. Co.,* 125 F.3d 1406, 1411 (11th Cir.1997). For the purposes of its Motion, Prime Care asks the court to assume that Strickland could establish a prima facie case of discrimination and has rested its arguments in support of summary judgment solely on the issue of pretext. Accordingly, the court's discussion here is limited to that lone issue—i.e., whether Strickland has sufficient evidence of pretext.[1]

In order to rebut the inference of discrimination established by the prima facie case, the defendant is required to articulate a legitimate nondiscriminatory reason for its decision to terminate the plaintiff. *See Texas Dept. of Community Affairs v. Burdine,* 450 U.S. 248, 254, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). To this end, Prime Care asserts that its decision to terminate Strickland was based on all of the following violations of its work rules: (1) Strickland was rude and/or unprofessional on several occasions in violation of established company policy; (2) Strickland was frequently tardy during the short time that she was employed at Prime Care in violation of company policy; and (3) Strickland failed to return to work, or phone Prime

---

1. The Plaintiff, who continues to bear the ultimate burden of persuasion, is, of course, still required to present sufficient evidence of a prima facie case at trial, even though the phrase "prima facie case" will no longer be used.

Care and explain her extended absence, after attending a doctor's visit despite having been told to do so. These reasons, if true, are certainly nondiscriminatory and an employer would be free under the federal employment discrimination laws to terminate any employee for such infractions without fear of judicial interference. Cf. Elrod v. Sears, Roebuck & Co., 939 F.2d 1466, 1470 (11th Cir.1991) (noting that courts do not second guess an employer's business judgment).

Having successfully articulated a non-discriminatory reason for the challenged employment action, the inference of discrimination raised by the prima facie case disappears, see St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 506, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993), and the burden shifts back to Strickland to show that the proffered reason is really a pretext for unlawful discrimination. See Burdine, 450 U.S. at 255–56, 101 S.Ct. 1089. A plaintiff successfully carries this burden by casting sufficient doubt on the proffered nondiscriminatory reasons to permit a reasonable factfinder to conclude that the employer's proffered "legitimate reasons were not what actually motivated its conduct." Cooper–Houston v. Southern Ry. Co., 37 F.3d 603, 605 (11th Cir.1994). A plaintiff may accomplish this goal by pointing to "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could find them unworthy of credence" or by directly persuading the district court that discrimination is more likely the true notice behind the challenged action. Combs v. Plantation Patterns, 106 F.3d 1519, 1539 (11th Cir.1997) (citations omitted).

■■■ The court now turns to a discussion of its reasons for concluding that Strickland has met her burden of producing sufficient evidence of pretext. Preliminarily, it is important to point out that much, if not all, of the evidence is disputed. Someone is lying or—at least—has simply forgotten the truth. Such cases are only infrequently resolved on summary judgment because the credibility of the witnesses and the weight of the evidence, quintessential jury questions, are so central to any ultimate determination. See Hairston v. Gainesville Sun Publ'g Co., 9 F.3d 913, 918 (11th Cir.1993). Additionally, Strickland has cited evidence that, if credited, may show that Ullmann, the ultimate decisionmaker, harbored a discriminatory animus toward unmarried, pregnant women. Such circumstantial evidence is highly suggestive of a discriminatory motive. See Jones v. Bessemer Carraway Med. Ctr., 151 F.3d 1321, 1323 n. 11 (11th Cir.1998) (holding that "language not amounting to direct evidence, but showing some racial animus, may be significant evidence of pretext once a plaintiff has set out a prima facie case"). Viewing the record as a whole, Damon v. Fleming Supermarkets of Florida, Inc., 196 F.3d 1354, 1361 (11th Cir.1999), this is sufficient evidence to avoid summary judgment.

### 1. The Conflicting Evidence

First, the court concludes that Strickland has offered evidentiary support by which a reasonable juror could conclude that the specific reasons for termination given by Prime Care are a pretext. As noted, Strickland allegedly was terminated because she violated several work rules. "On summary judgment, . . . the 'work rule' defense is arguably pretextual when a plaintiff submits evidence (1) that she did not violate the cited work rule, or (2) that if she did violate the rule, other employees outside the protected class, who engaged in similar acts, were not similarly treated." Damon, 196 F.3d at 1363 (citations omitted).

Strickland seeks to establish, by contradictory evidence, that she is innocent of many of the work rule violations alleged against her.[2] For example, the trio of

---

**2.** Strickland also seeks to establish pretext by using comparators. Because of the disposition

decisionmakers, Ullmann, Herring, and Smith, with Ullmann having final authority, assert, either by deposition or declaration, that they witnessed Strickland being rude on different occasions to different individuals. *See, e.g., Ullmann Depo.* at 147; *Herring Depo.* at 71–72. Strickland counters these assertions by deposition or declaration, claiming that none of the events they describe actually occurred and that the trio of decisionmakers are not telling the truth. *See, e.g., Strickland Decl.* ¶ 4, 6. Similarly, Strickland points to conflicting evidence regarding Prime Care's assertion that Strickland was terminated, in part, because she failed to return to work after going to a doctor's appointment. Smith testified in her deposition that she agreed to the absence but instructed Strickland to phone if she would be unable to return to work that evening. *See generally Smith Depo.* at 48. Strickland denies that she was instructed to phone if she was going to be late, *see Strickland Decl.* ¶ 8, and suggests that Prime Care's contrary assertion is implausible because it would be unreasonable to grant her permission to attend a doctor's appointment in the middle of the afternoon that was many miles from work, and also expect her to return, given the few hours left in the day and the time it would take to drive and be seen by the doctor. All of these are contested issues of fact properly placed before the jury, and assuming, as the court must for the purpose of this motion, that Strickland is telling the truth, they raise serious red flags as to the truthfulness of Prime Care's assertions.

The principal argument advanced by Prime Care in response to this conflicting evidence is that all the issues of fact pointed out by Strickland are simply not relevant to the question of pretext. As irrelevant, Prime Care argues, the conflict in evidence, although real, does not create an issue of fact that would preclude summary judgment. The court cannot agree.

Materiality or relevance, in this context, exists when the conflict in evidence, which plainly exists in this case, demonstrates a question of fact as to the truthfulness of the employer's stated reasons for its behavior. *See Combs,* 106 F.3d at 1538. In order to make such a showing, the general rule is that a plaintiff must do more than point to contradictory evidence that shows an employer may have been mistaken in its belief that the plaintiff committed the alleged infractions. *See Elrod,* 939 F.2d at 1470. "An employer who fires an employee under the mistaken but honest impression that the employee violated a work rule is not liable for discriminatory conduct." *Damon,* 196 F.3d at 1363 n. 3. Thus, for example, where an employer relies on an underling's report that the plaintiff committed the work rule violation in question and fires him on that basis, the plaintiff is unable to demonstrate pretext merely by showing that the report is false. *See Elrod,* 939 F.2d at 1469 (holding that such facts do not establish pretext); *see also Hawkins v. Ceco Corp.,* 883 F.2d 977, 980 n. 2 (11th Cir.1989) (same). Instead, the plaintiff must establish pretext by showing (or, at least, pointing to evidence that suggests) that the employer either did not rely on that report or that the employer did rely on the report but knew it was false. In either case, the plaintiff would have shown that the employer was likely lying about the reasons for its behavior and that, by definition, is pretext.

In support of its argument that the conflict in evidence is not relevant or material to pretext, Prime Care asserts that the conflicting evidence in this case goes only to whether the decisionmakers' reasons were mistaken, not whether they are false. Applying the general rule stated above, Prime Care argues, the court should find that Strickland has failed to cast doubt on the truthfulness of its explanation, notwithstanding the conflicting evidence or Strickland's denials. The court cannot

of this Motion, the court need not discuss this evidence.

agree. An employer may not benefit from the distinction drawn between an employer's belief that an employee committed a work rule violation and the factual accuracy of that belief when the actual predicate of such a belief is the personal knowledge of the decisionmaker. In such cases, the inquiry into the factual accuracy of events merges with the ultimate question of truthfulness because a lie as to one suggests a lie as to the other. *See, e.g., Damon,* 196 F.3d at 1364 (where plaintiff was discharged because of the decisionmaker's claim that the plaintiff used vulgarities in front of customers, a "genuine issue of material fact" was created by the plaintiff having denied that he used vulgarities).

In this case, the employer's nondiscriminatory reasons are based, in large part, on acts or omissions charged to Strickland that arise not from any allegedly mistaken belief[3] but from the decisionmakers' own personal knowledge. Ullmann, of his own personal knowledge, says Strickland was rude on such and such occasion; Strickland, of her own personal knowledge, denies it. Herring, of her own personal knowledge, asserts that Strickland was rude to a physician; Strickland, of her own personal knowledge, denies it. Smith claims Strickland was required to return to work after her doctor's appointment; Strickland denies it. Someone is lying and on summary judgment the court must accept that, however improbable it may seem, it is the moving party. Because knowledge of the underlying events is the actual predicate of the employer's decision, the falsity of the employer's assertion that those events occurred goes directly to the issue of pretext. *See Walker v. NationsBank of Fla. N.A.,* 53 F.3d 1548, 1564 n. 7 (11th Cir.1995) (Johnson, J., specially concurring) ("a plaintiff presenting evidence tending to show that the predicate facts underlying the proffered reason were false [creates an issue of fact when the] evidence [suggests] that the employer knew them to be false."). Therefore, the conflicting evidence is, for the most part, material and relevant to the question of pretext and an issue of material fact is ready to be put to the jury.

2. (Non) Conflicting Evidence

Prime Care also asserts that it terminated Strickland because she was habitually late and failed, after repeated warnings, to comply with the company's attendance policy. Strickland does not deny that she was frequently tardy or that she had been warned about her conduct. Accordingly, there is no issue of material fact as to this reason for Strickland's termination. This, however, does not mean that Prime Care is entitled to summary judgment.

There are cases where an employer gives several reasons for its action, any one of which would independently account for its decision. The plaintiff in such a case does not survive summary judgment without creating a question of fact as to all of the independent reasons proffered by the employer. *See Combs,* 106 F.3d at 1543 (plaintiff survives summary judgment by "producing evidence sufficient to discredit ... all of the defendant's nondiscriminatory reasons for its actions"). That is, the undisputed reason in such a case, being independent from the other reasons, stands apart from the disputed reasons and, hence, is not tainted merely because they are disputed. In other cases, however, the "multiple grounds offered by the defendant" are not truly independent but are "so intertwined" that the taint created by an issue of fact as to one such reason undermines the other reasons as well.

---

**3.** The court is aware that Herring asserts in her Affidavit that she received undescribed "reports" from unstated individuals that Strickland was rude or unprofessional. *See Herring Affidavit* ¶ 10. However, in a related assertion regarding these "reports," Herring states that Smith, Strickland's immediate supervisor, verbally counseled Strickland regarding her rude and discourteous behavior. *See id.* Both Strickland and Smith, who also had a substantial role in the decision to terminate the Plaintiff, deny that this counseling session took place. *See Smith Depo.* at 19. This too is an issue of fact for the jury.

*Russell v. Acme–Evans Co.,* 51 F.3d 64, 69 (7th Cir., 1995). This case falls within the latter category.

First, Prime Care does not assert that the Strickland was terminated solely because she was tardy. To the contrary, Prime Care argues that Strickland was terminated for the totality of her conduct and not any one of the individual reasons (tardiness, rudeness, or failing to return from the doctor) considered separately. For example, Prime Care asserts that the comparators cited by Strickland are inadequate, in part, because those employees engaged in only one of the different kinds of conduct charged against Strickland. So, for example, a comparator guilty only of rude behavior, who was treated more leniently, is not, according to Prime Care, sufficient to show pretext because Strickland was charged with rude behavior and tardiness. This conclusion, of course, necessarily relies on the premise that Strickland was discharged for the totality of her conduct and not any single type of conduct considered separately.

In the alternative, if the court were to assume that Prime Care would advance the argument, which it has not, that the separate reasons given for Strickland's termination are independent so that, considered separately, each reason would be suf-

ficient to justify the challenged action, the court's conclusion that summary judgment is improper would not change. Prime Care's attendance policy at the time provided as follows:

> Three consecutive absences, tardies, and/or short times will be considered as *one* occurrence, and will result in a verbal counselling [sic] session. Three additional (6 total) consecutive absences, tardies, and/or short times will be considered as *two* occurrences and will result in a counselling [sic] session. Three more (9 total) consecutive absences, tardies, and/or short times will be considered as *three* occurrences, and may result in termination.

*See Herring Affidavit, Ex. 1* at 3 (emphasis in original).

Although it is undisputed that Strickland was tardy many times,[4] it is also true that Prime Care does not contend that Strickland had "three occurrences." Under the policy, therefore, Strickland would not have been eligible for termination.[5] To the extent, therefore, that Prime Care argues that Strickland's tardiness is an independent reason for her termination, it would have to justify its departure from its established policy in this case.[6] That is, departure from established policies, absent any legitimate explanation, raises a question regarding the credibility of an employ-

---

**4.** Actually, there is a dispute about how many of these tardies were counted against Strickland. Strickland has evidenced that a number of the tardies were excused and, hence, under the attendance policy, do not count against her. *See Herring Depo.* at 29 (testifying that excused tardies do not count against an employee). How many tardies were unexcused and counted against Strickland, therefore, is a fact issue for the jury as well.

**5.** This, of course, supports the court's opinion that Strickland's tardiness is not an independent reason for her termination. Prime Care appears to agree with this result in its brief: "Strickland was *not* terminated for violating Prime Care's 'nine tardies and you're out policy'...." *Reply* at 3, n. 2; *see also Reply* at 13 ("Prime Care decided to terminate Strickland based on the sum total of her misconduct.").

**6.** It may be that Prime Care has offered such a justification. Prime Care asserts, several times, that the attendance policy was not strictly enforced during the time that Strickland worked at Prime Care. The court is not sure what to make of this assertion. All of the evidence appears to suggest that the policy was being enforced. For example, in the written counseling reports given to Strickland, Prime Care unequivocally reiterated the policy quoted above and explained the disciplinary action that could be taken under that policy. *See Strickland Depo, Ex. 4.* Moreover, it is patently inconsistent to submit the attendance policy to the court, explain its terms, and provide written documentation that it was being followed in the case of the Plaintiff, and then turn around and say that it was not strictly enforced as a justification for the employer's departure from the policy. Prime Care is free to make this argument to the jury.

er's reliance on the work rule. *See, e.g. Carter v. Three Springs Residential Treatment,* 132 F.3d 635 (11th Cir.1998). Accordingly, even assuming that Prime Care would argue that Strickland's tardiness is an independent reason for her termination, its departure from its own policy, in light of the other evidence before the court, would preclude summary judgment.

### 3. Circumstantial Evidence

Finally, there is significant circumstantial evidence that, if believed, may demonstrate that the decisionmaker harbored a discriminatory animus toward unmarried pregnant females. After learning she was pregnant, Strickland took Ullmann aside and asked him to perform a confirmatory blood serum pregnancy test. Strickland claims that Ullmann declined, stating "that he was very disappointed in me, that he didn't know how he would handle it if it was his own daughter .... that he couldn't believe I had actually allowed this happen.... He told me not to tell anybody, that he didn't want people to think badly of me as I was not married and had no intentions of getting married.... He told me not to advertise the fact around work. He didn't want to see me get a bad reputation." *Strickland Depo.* at 85. Ullmann denies that this conversation occurred. According to Strickland, Ullmann became hostile toward her after this conversation and refused to interact with her in a normal manner. Ullmann, again, denies this fact. At any rate, eight days later Strickland was terminated.

Prime Care argues that this evidence shows, at worst, a discriminatory animus toward unmarried, pregnant women and suggests that Strickland cannot premise a Title VII violation based on her status as a single pregnant female. Strickland, by contrast, has not argued whether this evidence might demonstrate an animus toward unmarried, pregnant females or, if it

does so, whether such animus would be proscribed by Title VII. Instead, Strickland appears to assume that Ullmann's comments demonstrate an animus against pregnant employees generally. The court need not resolve what the evidence might show because, under either formulation, both of which reasonably could be inferred, the evidence, if credited, is probative of a Title VII violation. For the present purposes, the court will assume that Prime Care is correct and that Ullmann's comments demonstrate, at worst, that he harbored a discriminatory animus toward unmarried, pregnant females. If the jury were to find that the challenged employment decision was based on this animus, then Title VII will have been violated. That is, Title VII, as amended by the Pregnancy Discrimination Act, makes illegal any employment decision based on the fact of a woman's pregnancy out of wedlock, as will be discussed below.[7]

Prime Care appears to argue that a policy that discriminates against unmarried, pregnant women does not violate Title VII because the differential treatment is not based on sex—that is, the motivating animus of such a policy is a classification that is neutral toward women, since women are included in the class of single, pregnant employees and in the class of married, pregnant employees. At one time, the Supreme Court agreed with this rationale. *See General Electric v. Gilbert,* 429 U.S. 125, 97 S.Ct. 401, 50 L.Ed.2d 343 (1976) (discrimination on the basis of pregnancy does not violate Title VII because the differential treatment is not based on sex, since women are included in the classes of pregnant and nonpregnant persons). Congress, however, legislatively overruled this decision, rejected the Court's interpretation of Title VII, and made it very clear that: "The terms 'because of sex' or 'on the basis of sex' in-

---

7. Prime Care seeks to attenuate the probative value of these statements by pointing to its exemplary record with regard to its pregnant employees. In light of the record, the court finds this argument unpersuasive. *See Connecticut v. Teal,* 457 U.S. 440, 454, 102 S.Ct. 2525, 73 L.Ed.2d 130 (1982) ("It is clear that Congress never intended to give an employer license to discriminate against some employees on the basis of race or sex merely because he favorably treats other members of the employees' group.")

clude, but are not limited to, because of or on the basis of pregnancy...." 42 U.S.C. § 2000e(k) (1994).

■ On the basis of this statutory authority, courts agree that an employer commits a violation of the Pregnancy Discrimination Act when it premises an employment decision, in whole or in part, on the fact that one of its female employees or applicants is pregnant out of wedlock.[8] *See, e.g., Jacobs v. Martin Sweets Co., Inc.,* 550 F.2d 364 (6th Cir.1977) (prior to PDA, court held employer's conduct animated by employee's pregnancy out of wedlock constituted constructive discharge in violation of Title VII); *Hargett v. Delta Automotive, Inc.,* 765 F.Supp. 1487 (N.D.Ala.1991) (termination); *Ponton v. Newport News School Bd.,* 632 F.Supp. 1056 (E.D.Va. 1986) (single pregnant woman forced to take leave of absence); *Harvey v. YWCA,* 533 F.Supp. 949 (W.D.N.C.1982) (termination). Noteworthy among the decided cases is the ruling by the former Fifth Circuit that a school board violated the equal protection clause when it discharged an employee because she was pregnant out of wedlock. *See Avery v. Homewood City Bd. Of Educ.,* 674 F.2d 337 (5th Cir. Unit B 1982).

Even assuming, therefore, that Prime Care is correct and that Ullmann's alleged comments, if true, demonstrate, at worst, an animus toward unmarried, pregnant women, then this evidence is nonetheless highly suggestive of a discriminatory motive proscribed by Title VII. Given the proximity between these alleged comments and the ultimate termination, together with the conflicting evidence regarding Prime–Care's stated reasons for the termination, a jury may well conclude that Prime Care terminated Strickland, in part, because of her pregnancy. All else being equal, such a finding would, as described

above, mandate a verdict for the Plaintiff notwithstanding how many times she was tardy, whether she was required to phone Smith after her doctor's appointment, or whether she was rude and unprofessional around the office. Of course, a jury may also discredit this evidence and find that the conflict in evidence results only from Strickland having lied about the events surrounding her termination. In such a case, Strickland will be entitled to no recovery and may well be liable for costs and attorney's fees.

Keeping in mind that "summary judgment is not [often] a proper vehicle for resolving claims of employment discrimination which ... turn on an employer's motivation and intent," *Pearson v. Macon–Bibb County Hosp. Auth.,* 952 F.2d 1274, 1280 (11th Cir.1992), only a position not easily reconciled with the Seventh Amendment would pretermit the trial of these facts in favor of a judicial termination about the merits of this suit. Although it may be true, as Prime Care has pointed out, that this suit presents no facts which indicate a landslide victory for Strickland, it is equally true that, even if all of the weight of the evidence runs counter to her, Strickland is entitled to have a jury resolve the issue. *See Walker,* 53 F.3d at 1563 (Johnson, J. specially concurring) (noting that "the fact-finder must evaluate the credibility of the witnesses and the weight of the evidence. This task is peculiarly the province of the jury.").

## V. *CONCLUSION*

For these reasons, the Motion for Summary Judgment filed by Prime–Care of Dothan is DENIED.

---

8. In this area, several cases have established that business necessity or a statutorily based Bona Fide Occupational Qualification ("BFOQ") may legally justify an employer's differential treatment of unwed pregnant women. *See, e.g., Chambers v. Omaha Girls Club, Inc.,* 834 F.2d 697 (8th Cir.1987) (role-model rule forbidding employment of single pregnant women in Girls Club organization qualified as BFOQ). Because this case does not raise the issue of legal justification, the court will not discuss its applicability to these facts.