Sandra C. SWEENEY, Plaintiff,

v.

State of ALABAMA ALCOHOLIC BEVERAGE CONTROL BOARD, Defendant.

No. CIV.A. 98–D–728–N.

United States District Court, M.D. Alabama, Northern Division.

Sept. 14, 2000.

Jacqueline L. Mixon, Montgomery, AL, for plaintiff.

Joseph W. Adams, Adams, Spivey & Adams, LLC, Ozark, AL, Robert S. Hill, Montgomery, AL, for defendant.

## MEMORANDUM OPINION AND ORDER

DE MENT, District Judge.

This case is before the court *sua sponte* for reconsideration of the court's partial denial of Defendant State of Alabama Alcoholic Beverage Control Board's ("ABC Board") Motion For Summary Judgment, filed February 1, 2000. In a Memorandum Opinion And Order entered on April 17, 2000, the court granted in part and denied in part the ABC Board's Motion For Summary Judgment. The court denied the ABC Board's Motion For Summary Judgment on Plaintiff's retaliation claim brought under the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. §§ 12101, et seq.[1] The court entered summary judgment in favor of the ABC Board on all Plaintiff Sandra C. Sweeney's

1. The court's Memorandum Opinion And Order entered on April 17, 2000, is published at *Sweeney v. State of Alabama Beverage Control Bd.*, 94 F.Supp.2d 1241 (M.D.Ala.2000). For brevity, the court will refer to this Memorandum Opinion And Order as *Sweeney I*.

("Sweeney") remaining claims. For the reasons to follow, the court finds that the ABC Board's Motion For Summary Judgment is due to be granted on Plaintiff's ADA retaliation claim and that the section in *Sweeney I,* in which the court denied summary judgment on Plaintiff's ADA retaliation claim, is due to be vacated and superseded with this Memorandum Opinion And Order.

## I. STANDARD FOR RECONSIDERATION

 "[B]ecause the denial of a motion for summary judgment is an interlocutory order, the trial court is free to reconsider and reverse its decision for any reason it deems sufficient, even in the absence of new evidence or an intervening change in or clarification of the substantive law." *Lavespere v. Niagara Machine & Tool Works, Inc.,* 910 F.2d 167, 185 (5th Cir. 1990); *see also Bon Air Hotel, Inc. v. Time,* 426 F.2d 858, 862 (5th Cir.1970)[2] (holding that, because the summary judgment "order was interlocutory, 'the court at any time before final decree (could) modify or rescind it' ") (quoting *John Simmons Co. v. Grier Brothers Co.,* 258 U.S. 82, 88, 42 S.Ct. 196, 66 L.Ed. 475 (1922)). Based on the foregoing, the court exercises its discretion to reconsider its earlier partial denial of the ABC Board's Motion For Summary Judgment.

## II. FACTUAL BACKGROUND

The facts are set forth in detail in *Sweeney I* and need not be repeated here in their entirety. 94 F.Supp.2d at 1245–53. The court, however, will set forth an abbreviated statement of facts that are relevant for purposes of the court's discussion below.

From October 15, 1994, until her termination on July 2, 1998, Plaintiff worked as a cashier at one of the ABC Board's retail stores in Montgomery, Alabama. *See id.* at 1245–46, 1250. One of Plaintiff's duties as a cashier included preparing and depos-

iting the store's daily proceeds at a local bank. *See id.* at 1256.

On August 1, 1997, Plaintiff was robbed at gunpoint while making a deposit at the bank's night depository. *See id.* As a result, Plaintiff suffered emotional trauma, including posttraumatic stress disorder. *See id.* In order to recover from the trauma, Plaintiff took a leave of absence from work, and, at the recommendation of her district supervisor, sought treatment from a psychologist. *See id.* The psychologist placed certain restrictions on Plaintiff's duties as a cashier with the ABC Board, including that she only work the day shift and not make bank deposits. *See id.* The psychologist discussed Plaintiff's work limitations in a letter to J.E. Brown ("Brown"), the Director of the ABC Board's Stores Division. *See id.*

When Plaintiff returned to work a few weeks after the robbery, the store manager failed to comply with the psychologist's restrictions. *See id.* Plaintiff complained of the store manager's conduct to her psychologist, to the district supervisor, and to legal counsel with the Alabama State Employees Association. *See id.* Upon learning of the store manager's conduct, Plaintiff's psychologist wrote a letter to Brown, recommending that Plaintiff "stay off work until further evaluated." *Id.* at 1247. Plaintiff remained on leave and continued her treatment with the psychologist. *See id.*

On October 27, 1997, while Plaintiff was on leave, she filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"). *See id.* at 1248. In her EEOC charge, Plaintiff alleged that the ABC Board violated the ADA by failing to provide reasonable accommodations for her disabilities stemming from the August 1997 bank robbery. *See id.*

Ultimately, on April 1, 1998, and while her EEOC charge was still pending, Plain-

---

**2.** In *Bonner v. City of Prichard,* the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit issued prior to October 1, 1981. *See* 661 F.2d 1206, 1209 (11th Cir.1981) (en banc).

tiff returned to work in her position as a cashier. *See id.* at 1249. In a letter to Brown, Plaintiff's psychologist stated that Plaintiff "is able to work in any capacity which she believes she can handle." *Id.* However, upon her return, the store manager continued to require Plaintiff to do tasks that she did not feel comfortable performing. *See id.* at 1250. These tasks included working until midnight, working alone, and accompanying other employees to the bank to make the daily deposits. *See id.* Plaintiff, thus, complained of further ADA discrimination to her district supervisor, among others. *See id.*

On June 20, 1998, while at work, Plaintiff became involved in an altercation with a co-employee and allegedly assaulted (or attempted to assault) the co-employee. *See id.* at 1251. Based on this altercation, on June 26, 1998, Brown recommended Plaintiff's termination in a letter to Robert B. Leavell ("Leavell"), the ABC Board's Administrator. *See id.* In that letter, Brown stated as follows:

*This is a decision paper.*

PURPOSE: To recommend dismissal of [Plaintiff] for serious violations of policy.

DISCUSSION: After receiving a report that [Plaintiff] had attempted to attack a coworker at Store 3 during duty hours, Tommy Miller and David Kilpatrick conducted an investigation. The investigation seems to validate the fact that [Plaintiff] did attempt to attack a coworker, but was restrained by her husband another store employee. The video surveillance tapes and statements by other store employees support this allegation.

During the course of the investigation, other information surfaced which indicates [Plaintiff] had violated numerous employee work rules. According to statements by other store employees and [Plaintiff's] own admission, she has engaged in what we deem to be inappropriate employee conduct.

RECOMMENDATION: [Plaintiff] be dismissed from State service for violation of State General Work Rules as stated in ABC Policies and Procedure, chapter ABC–7–16–.02(1)(d) and (g), and ABC–7–16–.02(2)(d), (e), and (n).

*See id.*

Leavell approved Brown's recommendation on June 26, 1998. *See id.* Thereafter, Leavell forwarded a letter to Plaintiff, informing her that "[i]nformation has been submitted that appears to warrant your dismissal from State service because of your violation of State General Work Rules." *Id.* at 1250–51. In this letter, Leavell listed the violations as follows:

Chapter ABC–7–16–,02(1)(d): Inattention to job—Doing anything distracting while on the job.

Chapter ABC–7–16,02(1)(g): Disruptive conduct of any sort, including a lack of cooperation and/or an unpleasant behavior toward fellow employees and/or supervisor.

Chapter ABC–7–16–,02(2)(d): Fighting

Chapter ABC–7–16–,02(2)(e): Use of abusive or threatening language.

Chapter ABC–7–16–,02(2)(n): Disgraceful conduct on or off the job.

*Id.* at 1251.

Further, in the same letter, Leavell informed Plaintiff that her pretermination hearing was set on July 1, 1998, at which time Plaintiff would "have the opportunity to present information in response to these allegations." *Id.* After the pretermination hearing, the ABC Board terminated Plaintiff from employment. *See id.* at 1251. Leavell memorialized the ABC Board's decision in a letter to Plaintiff dated July 2, 1998, which provides in pertinent part as follows:

Dear Ms. Sweeney:

In my letter dated June 26, 1998, you were notified that I was considering dismissal action because of your alleged violations of specific State of Alabama and ABC Board general work rules.

An informal pre-dismissal hearing was scheduled for July 1, 1998, at 3:30 p.m., wherein you were given the opportunity to address the specific allegations and/or present any mitigating considerations

relevant to the alleged violations. You were present at the hearing and represented by Counsel and did present your response to the charges. I have carefully considered the specific allegations made against you, and the Hearing Officers['] findings that you were a willing participant in lewd and unprofessional conduct toward customers, and did engage in threatened hostile actions toward a coworker. It is appropriate, based on these findings, to proceed with dismissal action.

You are dismissed from State service effective July 2, 1998.

A dismissed employee may, within ten days after receipt of written notice, appeal the action by filing with the State Personnel Board an answer to the charges made against you.

(Def.'s Mot. Summ. J., Ex. B.[3])

Plaintiff denies that she committed the infractions which led to her termination. Plaintiff's evidence of that denial consists of her deposition testimony, where she stated as follows:

A. [The ABC Board] accused me of attacking a coworker. Having improper physical contact with, you know, customers in a sexual nature.

Q. And you are saying you did not try to attack the coworker or did not have the improper contact with a customer?

A. I was signing out.

Q. I'm sorry?

A. I was signing out. I was getting ready to leave to go home, counting my money. And I guess she just figured that I was going to attack her, which that's not the case. It involved a shouting match.

Q. And the improper physical contact?

A. Well, this particular guy was told not to come into the store. And whenev-

er the supervisor or whenever I was alone in the store, he would come and chase me around the store. Kiss my boots or whatever. But he was told not to, you know, bother me. And I was afraid, because a lot of times I was alone. I felt like there was nothing I could do.

*Id.* at 1258.

Believing that the ABC Board wrongfully terminated her, Plaintiff appealed her discharge to the Alabama State Personnel Board ("Personnel Board").[4] *See id.* at 1251. The Personnel Board appointed a hearing officer to conduct a hearing and take evidence. Plaintiff was present at the hearing held on October 9, 1998. *See id.* Seven witnesses testified, including two of Plaintiff's co-employees: Paige Watkins ("Watkins"), whom Plaintiff allegedly assaulted; and Bessie Auls ("Auls"). *See id.*

In a written Order, signed October 23, 1998, the hearing officer made the following findings of fact and conclusions of law:[5]

The Department has charged the Employee with two separate and distinct matters. The first involves the assault or attempted assault upon a co-worker, Ms. Paige Watkins, which occurred on June 20, 1998. The testimony in this case is undisputed the Employee made an effort to physically attack Ms. Watkins and had to be restrained by her husband. The only disputed evidence concerning the June 20, 1998 incident is whether the Employee threatened to kill Ms. Watkins during the course of this attack. I find the greater weight of credible evidence to be that the Employee did in fact threaten to kill Ms. Watkins during the course of this attack. The Department has proved this charge by more than substantial evidence.

---

**3.** Leavell's letter is attached as Exhibit B to Defendant's Brief In Support Of Motion For Summary Judgment (Doc. No. 24).

**4.** Pursuant to § 36–26–27(a) of the Code of Alabama, when an employee is dismissed by his or her appointing authority, in this case

the ABC Board, he or she may appeal such action to the Personnel Board and request a hearing. ALA. CODE § 36–26–27 (1991).

**5.** The hearing officer refers to the ABC Board as "Department," and Plaintiff as "Employee."

The second charge against the Employee involves improper conduct on the part of the Employee with customers in the store. The evidence presented at the hearing shows this contact to have been of an inappropriate or improper sexual nature in that the Employee engaged in words and actions of an inappropriate sexual nature with customers during regular business hours. The evidence in this case strongly supports a finding that the Employee did in fact engage in improper contact with customers to include improper touching of customers during normal business hours. The video tape which purports to show improper actions by the Employee corroborates the testimony of the witnesses. The only bothersome thing about the evidence concerning this matter is the apparent lack of supervision by the store management. I do not believe the manager of the store was unaware of these events. There is some evidence the Manager took some action to discourage these events by discouraging customers from hanging around the store. However, the evidence does not show any formal disciplinary action was taken against the Employee for these events. The investigator testified the Department was not aware of the inappropriate contact with customers until such time as it investigated the assault upon Ms. Watkins.

The evidence in this case overwhelmingly shows the improper conduct alleged by the Department to be proved by more than substantial evidence. I find the witnesses on behalf of the Department to be far more credible than the witnesses on behalf of the Employee.

Therefore, the Department has proved its second charge against the Employee.

*Id.* at 1251–52. The hearing officer recommended that "the Employee's dismissal be upheld." *Id.* at 1252.

After examining the record of the proceedings before the hearing officer, the Personnel Board "adopt[ed]" the hearing officer's "findings of fact and conclusions of law." *Id.* at 1252. The Personnel Board then "affirmed" the ABC Board's decision "to dismiss" Plaintiff. *Id.*

## III. DISCUSSION

Plaintiff contends that, in violation of the ADA, the ABC Board fired her as an act of retaliation because Plaintiff filed an EEOC charge against the ABC Board ("ADA retaliation claim"). In *Sweeney I,* the court denied the ABC Board's Motion For Summary Judgment on this claim. 94 F.Supp.2d at 1255–59. The court now re-examines its findings in *Sweeney I* on Plaintiff's ADA retaliation claim.

As explained in *Sweeney I,* because Plaintiff seeks to prove her retaliation claim through circumstantial evidence of the ABC Board's intent, the court applies the three-part, burden-shifting analysis articulated in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), and *Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). *Sweeney I,* 94 F.Supp.2d at 1254. Under the *McDonnell Douglas* and *Burdine* burden-shifting analysis, a plaintiff bears the initial burden of raising an inference of discrimination by establishing a prima facie case. *See Batey v. Stone,* 24 F.3d 1330, 1333 (11th Cir.1994). To demonstrate a prima facie case of retaliation under the ADA, a plaintiff "must show: (1) statutorily protected expression; (2) adverse employment action; and (3) a causal link between the protected expression and the adverse action." *Stewart v. Happy Herman's Cheshire Bridge, Inc.,* 117 F.3d 1278, 1287 (11th Cir.1997).

Once a plaintiff establishes a prima facie case, the burden shifts to employer who must offer a legitimate, non-discriminatory reason for its adverse employment decision. *See Meeks v. Computer Associates Intern.,* 15 F.3d 1013, 1021 (11th Cir.1994) (quoting *Tipton v. Canadian Imperial Bank of Commerce,* 872 F.2d 1491, 1495 (11th Cir.1989)). If the employer satisfies its burden, the plaintiff then bears the ultimate burden of proving that the em-

ployer's proffered reasons are pretextual. *See Combs v. Plantation Patterns,* 106 F.3d 1519, 1528 (11th Cir.1997).

In applying this three-part, burden-shifting analysis in *Sweeney I,* the court found, first, that Plaintiff demonstrated a prima facie case of retaliation. 94 F.Supp.2d at 1256–57. Second, the court concluded that the ABC Board's assertions that Plaintiff violated its work rules constituted legitimate, non-discriminatory reasons for Plaintiff's termination. *See id.* at 1257.

Third, the court found that Plaintiff created a genuine issue of material fact on the issue of whether the ABC Board's proffered reasons for Plaintiff's termination are a pretext for intentional discrimination. *Id.* at 1257. In reaching this conclusion, the court relied on *Damon v. Fleming Supermarkets of Florida, Inc.,* 196 F.3d 1354 (11th Cir.1999). In *Damon,* the Eleventh Circuit held that, when the employer justifies the plaintiff's discharge by relying on a work rule violation, as here, a plaintiff may prove pretext by proffering "evidence (1) that [he or] she did not violate the cited work rule, or (2) that if [he or] she did violate the rule, other employees outside the protected class, who engaged in similar acts, were not similarly treated." *Id.* at 1363.

In opposing summary judgment, Plaintiff relied on the first *Damon* method. Namely, in her deposition, Plaintiff attempted to show an intent to retaliate by arguing that she never committed the violations of which she was accused. *See Sweeney I,* 94 F.Supp.2d at 1258. Based upon *Damon,* the court found that Plaintiff's denial was sufficient to create a jury issue on pretext. *Sweeney I,* 94 F.Supp.2d at 1258–59. It is this finding, upon reconsideration, with which the court now disagrees. Namely, the court finds that Plaintiff's denial that she violated work

rules is insufficient, in and of itself, to raise a jury question as to whether the ABC Board's reasons are a pretext for discrimination. The court reaches its conclusion for the following reasons.

In *Sweeney I,* the court correctly stated the law from *Damon.* As stated, the *Damon* Court held that, in a discrimination case where the employer asserts that the employee violated a work rule, the employee may show pretext by demonstrating that he or she did not violate the work rule. *Sweeney I,* 94 F.Supp.2d at 1257–58; *Damon,* 196 F.3d at 1363. However, upon reconsideration, the court finds that this first *Damon* method, upon which Plaintiff relies, is inapplicable in this action.

 That part of the *Damon* holding, which allows a plaintiff to establish pretext by demonstrating that the work rule violation did not occur, applies in cases where the decisionmaker observes the alleged work rule violation and, thus, has personal knowledge thereof. *See Strickland v. Prime Care of Dothan,* 108 F.Supp.2d 1329, 1334 (M.D.Ala.2000) (Albritton, Chief J.). Where, as here, the decisionmaker (i.e., the ABC Board) does not have personal knowledge of the work rule violation, but rather relies on second-hand information that an employee committed the violation, a different rule applies. In this scenario, an employee cannot demonstrate pretext merely by showing that the work rule violation did not occur and that, therefore, the information relied upon by the decisionmaker is false. *See Strickland,* 108 F.Supp.2d at 1333 (citing *Elrod v. Sears, Roebuck & Co.,* 939 F.2d 1466 (11th Cir.1991)). That is because, in cases where the decisionmaker does not witness the alleged infraction, "[a]n employer who fires an employee under the mistaken but honest impression that the employee violated a work rule is not liable for discriminatory conduct." [6] *Damon,* 196 F.3d at

---

6. To the contrary, as stated in *Strickland,* "[a]n employer may not benefit from the distinction drawn between an employer's belief that an employee committed a work rule violation and the factual accuracy of that belief when the actual predicate of such a belief is the personal knowledge of the decisionmaker." 108 F.Supp.2d at 1333 (citing *Damon,* 196 F.3d at 1364).

1363 n. 3; *see also Strickland,* 108 F.Supp.2d at 1333. In other words, whether or not a plaintiff actually committed the work rule violations is immaterial on the issue of pretext. Rather, what is material is whether or not the employer believed the allegations to be true, not whether they were in fact true. *See Elrod,* 939 F.2d at 1470.

■ Thus, to establish pretext, the employee must show more than facts establishing that he or she did not commit the work rule violation. The employee must point to evidence which raises a question as to whether the decisionmaker, in fact, knew that the violation did not occur and, despite this knowledge, fired the employee based upon the false premise of an alleged work rule violation. For example, where the employer relies on a subordinate's report that a plaintiff violated a work rule,

> the plaintiff must establish pretext by showing (or, at least, pointing to evidence that suggests) that the employer either did not rely on that report or that the employer did rely on the report but knew it was false. In either case, the plaintiff would have shown that the employer was likely lying about the reasons for its behavior and that, by definition, is pretext.

*Id.*

The case of *Elrod v. Sears, Roebuck & Co.,* 939 F.2d 1466 (11th Cir.1991), is instructive on what is required in this case for Plaintiff to raise a factual question on the issue of pretext. In *Elrod,* an action brought under the Age Discrimination in Employment Act ("ADEA"), the Eleventh Circuit reversed the judgment of the district court, holding that the plaintiff, James Elrod ("Elrod"), failed to establish pretext. 939 F.2d at 1468. Elrod was fired by his employer. The employer claimed the discharge was based on Elrod's sexual harassment of other employees. *See id.* at 1468–69. The Eleventh Circuit held that the issue of pretext hinged upon whether, at the time it discharged Elrod, the employer genuinely believed Elrod was guilty of harassing other

employees. *See id.* at 1470. The Court explained:

> Much of Elrod's proof at trial centered around whether Elrod was in fact guilty of the sexual harassment allegations leveled at him by his former co-workers. We can assume for purposes of this opinion that the complaining employees interviewed by Rives were lying through their teeth. The inquiry of the ADEA is limited to whether Rives, Malone and Merrill [the decisionmakers involved in Elrod's discharge] believed that Elrod was guilty of harassment, and if so, whether this belief was the reason behind Elrod's discharge. *See Hawkins v. Ceco Corp.,* 883 F.2d 977, 980 n. 2 (11th Cir.1989) ... (1990) (That the employee did not in fact engage in misconduct reported to the employer is irrelevant to the question whether the employer believed the employee had done wrong.).

*Id.* at 1470 (internal footnote omitted). The Eleventh Circuit explained that, even if the allegations against him were false, Elrod had not presented any "evidence that [the employer's] asserted belief in those allegations was unworthy of credence." *Id.* at 1471. Thus, the Eleventh Circuit held that Elrod, in failing to offer evidence of pretext, could not prevail on his ADEA discrimination claim. *See id.*

■ Applying the foregoing principles of law, the court finds that Plaintiff has failed to raise a genuine issue of material fact on the issue of pretext. The sole evidence Plaintiff has proffered to demonstrate pretext is her deposition testimony that she did not commit the work rule violations. *See Sweeney I,* 94 F.Supp.2d at 1258. Here, like in *Elrod,* the court assumes, without deciding, that Plaintiff did not commit the work rule violations. However, even assuming as true Plaintiff's assertion, her evidence is insufficient to demonstrate pretext because, here, the ABC Board, as the decisionmaker, did not personally observe Plaintiff's alleged infractions. Rather, the ABC Board learned of the accusations from one of Plaintiff's su-

pervisors. *See Sweeney I,* 94 F.Supp.2d at 1251. Thus, the material inquiry in this case is whether or not the ABC Board believed the allegations to be true that Plaintiff committed the work rule violations, not whether the allegations were in fact true. *See Elrod,* 939 F.2d at 1470.

As in *Elrod,* Plaintiff has presented absolutely no evidence casting doubt on the ABC Board's assertion that it believed Plaintiff violated its work rules and that, based on those violations, it fired Plaintiff. In the instant case, the record is devoid of any evidence suggesting that the ABC Board knew that Plaintiff had not committed the violations but chose anyway to rely on false information that the infractions had occurred. *See Strickland,* 108 F.Supp.2d at 1333. To the contrary, the evidence reveals that the ABC Board, similar to the decisionmakers in *Elrod,* 939 F.2d at 1470–71, conducted an independent inquiry and allowed Plaintiff an opportunity to respond in order to ascertain the veracity of the reported work rule violations. (Def.Mot.Summ. J., Ex. B.) At most, the evidence reveals that the ABC Board was mistaken as to its belief that Plaintiff violated the work rules at issue, which is insufficient to establish liability. *See Elrod,* 939 F.2d at 1470; *see also Damon,* 196 F.3d at 1363 n. 3.

In sum, the ABC Board has given a non-discriminatory explanation as to why it fired Plaintiff. Plaintiff has failed to proffer any evidence demonstrating or implying that the ABC Board's articulated reasons for firing Plaintiff are pretextual. *See Damon,* 196 F.3d at 1361 (emphasizing that courts "are not in the business of adjudging whether employment decisions are prudent or fair. Instead, [the court's] sole concern is whether unlawful discriminatory animus motivates a challenged employment decision"). Accordingly, in the absence of any evidence of pretext, the court finds that summary judgment is due to be granted on Plaintiff's ADA retaliation claim.

## IV. ORDER

Upon *sua sponte* RECONSIDERATION of the court's Memorandum Opinion And Order, entered April 17, 2000, it is ORDERED that the ABC Board's Motion For Summary Judgment on Plaintiff's ADA retaliation claim be and the same is hereby GRANTED.

It is further CONSIDERED and ORDERED that the section of the court's Memorandum Opinion And Order, entered April 17, 2000, in which the court denied summary judgment on Plaintiff's ADA retaliation claim be and the same is hereby VACATED and SUPERSEDED with this Memorandum Opinion And Order.

A judgment in accordance with this Memorandum Opinion And Order shall be entered separately.

## JUDGMENT

In accordance with the attached Memorandum Opinion And Order and Rule 58 of the Federal Rules of Civil Procedure, it is CONSIDERED, ORDERED and ADJUDGED that summary judgment be and the same is hereby GRANTED in favor of Defendant State of Alabama Alcoholic Beverage Control Board, and against Plaintiff Sandra C. Sweeney, and that Plaintiff take nothing by her said suit.

It is further CONSIDERED and ORDERED that all costs herein incurred be and the same are hereby taxed against Plaintiff, for which let execution issue.