Jerome SMITH, Plaintiff,

v.

**INTERNATIONAL PAPER COMPANY, Defendants,**

Paper, Allied–Industrial, Chemical and Energy Workers International Union, a/k/a Pace International Union, As Additional Defendant Under Rule 19.

No. CIV. A. 00–A–930–N.

United States District Court, M.D. Alabama, Northern Division.

Sept. 5, 2001.

John P. Willis, IV, Smith & Alspaugh, PC, Birmingham, AL, for Plaintiff.

Jerome Smith, Selma, AL, Pro se.

Thomas R. Brice, Christine Rieger Milton, McGuire, Woods, Battle & Boothe, LLP, Jacksonville, FL, Joseph Vincent Musso, Cabaniss, Johnston, Gardner, Dumas & O'Neal, Birmingham, AL, J. Cecil Gardner, Kimberly J. Calametti, Gardner Middlebrooks Fleming, Gibbons & Kittrell, PC, Mobile, AL, for Defendants.

### *MEMORANDUM OPINION*

ALBRITTON, Chief Judge.

## I. *INTRODUCTION*

This case is before the court on a Motion for Summary Judgment filed by the Defendant, International Paper Company ("IP") on June 22, 2001.

The Plaintiff, Jerome Smith ("Smith"), filed his Complaint in this case on July 14, 2000 and filed an Amended Complaint on September 29, 2000. In the Amended Complaint, Smith brings claims under Title VII of the Civil Rights Act of 1964 ("Title VII") for race discrimination (Count I) and for race discrimination in violation of 42 U.S.C. § 1981 (Count I)[1] against IP.[2]

For the reasons to be discussed, the Motion for Summary Judgment is due to be GRANTED.

## II. *SUMMARY JUDGMENT STANDARD*

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of

---

1. Both of the Counts in Smith's Amended Complaint are labeled "Count I."

2. Paper, Allied–Industrial, Chemical and Energy Workers International Union, a/k/a

PACE International Union is named as a Defendant so that complete relief may be accorded and has not been named as a defendant for purposes of liability. Amended Complaint at ¶ 6.

law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

The party asking for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the 'pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Id.* at 323, 106 S.Ct. 2548. The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing, or pointing out to, the district court that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Id.* at 322–324, 106 S.Ct. 2548.

Once the moving party has met its burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324, 106 S.Ct. 2548. To avoid summary judgment, the nonmoving party "must do more than show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). On the other hand, the evidence of the nonmovant must be believed and all justifiable inferences must be drawn in its favor. *Anderson v. Liberty Lobby*, 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

After the nonmoving party has responded to the motion for summary judgment, the court must grant summary judgment if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c).

### III. *FACTS*

The submissions of the parties establish the following facts, construed in a light most favorable to the non-movant:

Smith is an African–American male who has worked for IP at the Prattville, Alabama paper mill beginning in 1998. In January 1999, Smith began company-sponsored training at John Patterson Technical School ("J.P.Tech"). Under this program, IP paid for the training classes and paid the employees for their time spent during the training classes. To receive compensation, the employees of IP who were students at J.P. Tech ("employees/students") were responsible for entering their J.P. Tech class hours into the IP computer payroll system by the end of each week.

Smith was terminated from his employment with IP in January of 2000 for falsifying payroll records. Specifically, IP states that Smith missed training classes at J.P. Tech, but sought compensation from IP for the time he would have spent had he been in class. During the Fall 1999 term, IP requested attendance records of the courses taught by Tobit Ellis ("Ellis") and Ralph Burton ("Burton") at J.P. Tech. IP has provided affidavits from its officials stating that once the documentary evidence appeared to reveal that Smith had been absent from classes for which he had sought compensation, Ellis and Burton were questioned as to whether Smith had indeed missed those particular classes and they confirmed that Smith had missed those classes. Robert Stacy Affidavit at ¶ 9. Ellis and Burton also provided signed letters stating that Smith was absent from the classes for which IP paid Smith. *Id.* Smith denies that he missed classes, states that the attendance records are unclear and inconsistent, and argues that white employees who missed classes or were tardy to classes but sought compensation were not terminated.

## IV. *DISCUSSION*

### A. Race Discrimination Claims

A plaintiff may establish a claim for violation of Title VII and 42 U.S.C. § 1981 by use of either direct or circumstantial evidence of discriminatory intent. *See Brown v. American Honda Motor Co., Inc.,* 939 F.2d 946 (11th Cir.1991)(Title VII framework applies to § 1981 claims). Where, as here, the plaintiff seeks to prove intentional discrimination on the basis of race by using circumstantial evidence of intent, the court applies the framework first set out by the United States Supreme Court in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). Under this framework, the plaintiff must establish a prima facie case of discrimination. *Id.* at 802, 93 S.Ct. 1817. After the plaintiff has established a prima facie case of discrimination, the burden of production is placed upon the employer to articulate a legitimate nondiscriminatory reason for its employment action. *Texas Dept. of Community Affairs v. Burdine,* 450 U.S. 248, 254, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). The plaintiff may seek to demonstrate that the proffered reason was not the true reason for the employment decision "either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Burdine,* 450 U.S. at 256, 101 S.Ct. 1089; *Combs v. Plantation Patterns,* 106 F.3d 1519, 1528 (11th Cir. 1997). A plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated. *Reeves v. Sanderson Plumbing Products, Inc.,* 530 U.S. 133, 147, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000).

### 1. Prima Facie Case

A plaintiff establishes a prima facie case of discrimination in a case such as this one by demonstrating that (1) the plaintiff belongs to a protected class, (2) the plaintiff has engaged-either disputedly or admittedly in misconduct similar to persons outside of the protected class, and (3) that similarly situated persons outside of the protected class received more favorable treatment. *Jones v. Bessemer Carraway Medical Center,* 137 F.3d 1306, 1311 n. 6 (11th Cir.1998), *opinion modified by,* 151 F.3d 1321 (1998).

IP has moved for summary judgment stating that Smith cannot establish a prima facie case because Smith cannot demonstrate that similarly situated persons outside of his racial classification were treated more favorably. According to IP, Smith missed training classes, but falsified his payroll records by representing to his employer that he was present for those classes. IP points to evidence of several non-minority persons offered as comparators by Smith and argues that they are not similarly-situated because they did not similarly falsify payroll records.

Smith argues that he has consistently maintained that he was not absent from the classes in question and that the attendance records are unclear. Whether or not Smith missed all of the classes, however, a plaintiff cannot establish a prima facie case of racial discrimination by showing just that he belongs to a protected class and did not violate the work rule. *Jones,* 137 F.3d at 1311 n. 6. He must also point to someone outside the protected class who disputed or admitted a violation of the work rule and who was treated better. *Id.* The prima facie case element, as defined by the Eleventh Circuit, is that the plaintiff either disputedly or admittedly violated the work rule. *Id.*

Under Eleventh Circuit precedent, if two employees are not similarly situated, the different application of workplace rules does not constitute illegal discrimination. *Lathem v. Department of Children and Youth Services,* 172 F.3d 786, 793 (11th Cir.1999). In determining whether employees are similarly situated for purposes of a prima facie case, a court must consider whether the employees are involved in or accused of same or similar conduct and are disciplined in different ways. *Silvera v. Orange County School Bd.,* 244 F.3d 1253, 1259 (11th Cir.2001). The comparator's misconduct must be nearly identical to the plaintiff's so that courts will not second-guess employers' reasonable decisions. *Id.* With these principles in mind, the court will examine the evidence regarding each of the comparators pointed to by Smith.

To establish that his comparators are similarly-situated, Smith has pointed to a large volume of documentary evidence and has stated that 17 out of 27 white employees/students are indicated on class attendance records as being absent and/or tardy on days that they registered hours into the computerized payroll system and received wages and that none of these employees/students were terminated.[3] Smith has referred to records which include the period of Fall 1997 until 2001. In an effort to analyze this evidence effectively, the court will divide its analysis into the school terms to which the evidence pertains.

 a. 1997 through Spring 1999

There is no evidence to establish that IP was aware of any attendance records which preceded the Fall 1999 term. In fact, Rusty Adair ("Adair"), Personnel Supervisor, states that he conducted an audit of IP maintenance employees enrolled at J.P. Tech. for the Fall 1999 semester and the Spring and Fall 2000 semesters. Rusty Adair Second Affidavit, ¶ 3. *See Vickers v. Federal Express Corp.,* 132 F.Supp.2d 1371, 1380 (S.D.Fla.2000)("Disparate discipline cannot be shown without first showing that the employer was aware of the comparator's misconduct."). In any event, while Smith may have attached records from 1997, 1998 to his brief, he has not cited this court to any 1997 or 1998 attendance records, much less any specific portion of any such records. Smith has not complied with his responsibility in responding to the Motion for Summary Judgment. *See* Order, June 25, 2001 (Doc. # 55)("If a document ... is to be considered on the issue of summary judgment, a party shall specifically designate which parts of the document are deemed relevant.... No parts of documents not so specifically designated will be considered."). While the court has given Smith some lee-way in reference to other years where specific employees are identified by him, with regard to the time span preceding Fall 1999, Smith has not identified by name any comparator employees whose 1997 or 1998 attendance records he seeks to rely upon in opposing summary judgment. He has merely referred to these years and included a list of thirteen employees' names, apparently asking the court to compare the records and determine which employees' records from 1997 or 1998 are relevant.[4] Accordingly, because no audit had been conducted of these

---

**3.** Smith also points out that he was the only black IP employee in four years to enroll at the program at J.P. Tech. It is not clear what significance Smith attributes to this evidence. Without any statistical foundation, however, the court cannot conclude that the fact that Smith was the only black employee enrolled in the program is relevant evidence to his claim that he was terminated on the basis of race, not for falsifying payroll records.

**4.** This task is made even more difficult by the fact that Smith often relies on evidence regarding the same employee's attendance in multiple school terms.

terms which would have given IP any knowledge of possible misconduct by IP employees, and because Smith has not identified which employees he contends are relevant comparators, this court will not consider the evidence from 1997 and 1998 in ruling on the Motion for Summary Judgment.

■ With regard to Spring 1999, as earlier stated, this term is not within the scope of any audits conducted by IP. Even if this evidence could be relevant, however, Smith relies on evidence from the Spring 1999 term with regard to recorded tardies, not absences, of two employees. The court must agree with IP that there is insufficient evidence from which to conclude that such employees/students were similarly-situated to Smith, whom IP states it terminated for being absent from, not merely tardy to, classes for which he sought compensation. IP has not taken the position that receiving compensation for a class to which an employee was tardy would constitute falsification of payroll records. IP instead states, through Adair, that IP has never terminated any employee for being tardy to class at J.P. Tech. Rusty Adair Second Affidavit at ¶ 3. The court must conclude, therefore, that employees/students who were merely marked tardy did not engage in similar enough offenses to be considered to be similarly-situated to Smith. *See Lathem*, 172 F.3d at 793 (the most important factors in the similarly situated analysis are the nature of the offenses committed and the punishments imposed).

Smith also argues that an employee named Pugh was absent from a class for which he received compensation in the Summer 1999 term. Again, such a term would not have been within the scope of IP's audit. Even if this evidence could be properly considered as part of a prima facie case, however, the court does not find that the evidence Smith has cited supports his argument. The document stamped J.P. Tech 00829[5] reveals that Pugh was absent from MTT 120 Engine Lathe on July 26, 1999, and document J.P. Tech 00830 reveals that he was absent from Lab on July 26–29, 1999. The payroll records attached to Smith's response to summary judgment, however, only include Pugh's pay from the period of 19990403, which this court interprets as April 3, 1999, to 19990625, which this court interprets as June 25, 1999. These records, therefore, do not encompass the attendance dates at issue. The court, therefore, has no payroll records from which to draw any comparison. Even if Summer 1999 evidence is relevant, therefore, Smith has failed to demonstrate that Pugh is similarly situated to Smith.[6] *See Holifield v. Reno*, 115 F.3d 1555, 1562 (11th Cir.1997) (explaining that "[t]o make a comparison of the Plaintiffs's treatment to that of non-minority employees, the plaintiff must show that he and the employees are similarly situated in all relevant respects.").

### b. Fall 1999

The four white employees/students identified by Smith as having received wages

---

5. The evidence has not been assigned exhibit numbers. Where possible, the court will refer to the number stamped on the pages. When referring to attendance records, this number begins with "J.P. Tech," and when referring to payroll records, this number begins with "IP."

6. In a courtesy copy provided to the court, Smith has highlighted payroll records for

Pugh for April 10 and May 08. This evidence is not highlighted in the copy filed with the clerk of the court; therefore, IP has not been provided with the identification of this evidence and the court will not consider it. Even if the court did consider the highlighted portions, however, the attendance records provided are for May 17 through August 6. The court does not have evidence before it of any absences corresponding to those dates.

for several days on which they were marked absent during the Fall 1999 term are Ken Bailey ("Bailey"), Scott Carmichael ("Carmichael"), Richard Ausborn ("Ausborn"), and Chad Baker ("Baker").[7] At the outset, the court notes that in interpreting this evidence, it has had to read through the documentary evidence looking for references to these names, and, where applicable, comparing the evidence to IP's description of the evidence for specific dates.

IP argues that Smith cannot show that any white employees identified by Smith as being paid for classes they failed to attend during the Fall 1999 semester are similarly situated to Smith. The court begins with the evidence regarding Bailey.

The court's review of the documentary evidence provided by Smith reveals that Bailey was absent from class on October 12, see J.P. Tech 0837, December 5, see J.P. Tech. 0839, and September 27, see J.P. Tech 0841. The payroll records provided only cover portions of the months of October and November. Therefore, Smith apparently does not contend that the September and December absences were compensated. In any event, he has failed to provide any evidence to establish that those absences from class were compensated.

■ Although IP does not dispute that Bailey entered time for a class he did not attend due to a family emergency, IP states that Bailey subsequently attended a class for which he did not enter time. Robert Stacy Affidavit at ¶ 13. Bailey was issued a written reprimand by IP, rather than being terminated, because he attend-

ed class for an equal number of hours for which he was paid. *Id.* Smith in fact acknowledges this explanation by IP when he argues in his brief that two white employees identified by IP during the audit of the Fall 1999 classes either had a good enough excuse for falsifying the payroll records or the evidence proving falsification did not elicit termination.[8] *See* Plaintiff's Response, page 10. This court must conclude because Bailey was not compensated for more hours than class hours he attended, Bailey and Smith are not similarly-situated.

■ IP admits that an absence was recorded for Carmichael for which he was compensated, but states that Carmichael denied entering time for class he did not attend, and also provides evidence that J.P. Tech instructors informed IP that they were not sure whether or not Carmichael had missed the class in question. Affidavit of Robert Stacy at ¶ 14. Robert Stacy, Human Resources Leader at IP, further stated that although IP gave Carmichael the benefit of the doubt when J.P. Tech instructors could not verify his absence, IP counseled Carmichael that falsification of payroll records would result in his termination. *Id.* By contrast, the instructors at J.P. Tech did inform IP that they were sure that Smith had missed the classes recorded as being missed by Smith. Rusty Adair First Affidavit at ¶ 7. The court must conclude, therefore, that Carmichael and Smith are not similarly situated.

The court's review of Ausborn's attendance records indicates that there is an illegible entry for a class on October 7, and

---

7. Smith has also identified employees/students who were tardy for classes during the Fall 1999 term, but as earlier discussed, the court has been presented with no evidence that IP considered recording as class hours a class to which the employee/student was tardy to be a falsification of payroll records.

8. It is unclear whether Smith, by making this statement, is conceding that IP's decision not to terminate these two employees is not evidence of pretext.

that Ausborn was compensated for attending class on that date. The court finds no other absences for which compensation was sought, but IP represents that Ausborn missed his daytime classes on September 7.

IP states that Ausborn was not absent from any class for which he entered time in the payroll system. IP acknowledges that there was an issue as to the October 7 class date because the attendance mark in the roll book was illegible. Adair states in his affidavit that he personally interviewed Ausborn's instructor, Burton, who stated that Ausborn attended class on that day. Adair Second Affidavit at ¶ 6. The court must conclude, therefore, that Ausborn and Smith are not similarly situated with respect to that particular date of attendance.

In addition, IP has stated that while Ausborn missed his daytime classes on September 7, he attended his nighttime Motor Controls class on September 7 and only sought compensation for that class, not his daytime classes. *Id.* at ¶ 7. The court has examined the payroll records and attendance records provided by IP. There is a recorded "100" under September 7 for Ausborn in the Motor Controls course, indicating that Ausborn received a grade on that date in that class. There is also evidence in the payroll record that Ausborn claimed 4.75 hours for that day, which appears to correspond with attendance at one class. The court must conclude, therefore, that Ausborn and Smith are not similarly situated because Ausborn did not receive compensation for more class hours than he attended.

The court has reviewed the documentary evidence provided by Smith regarding Baker's attendance and compensation in the Fall of 1999. In the absence of any

guidance from Smith, the court has compared the records in an attempt to determine upon which absences Smith bases his claims. The court finds recorded absences on the class rolls for October 18, November 5, November 11, November 15, and from lab on November 16–18. The payroll records Smith has provided begin with November of 1999 and, therefore, the only evidence the court has of dates to consider fall in November and December.[9]

■ IP argues that offered comparator Baker worked at the mill for one of the missed class days, and was tardy, rather than absent, another day. Adair Second Affidavit at ¶ 10. IP states that although Baker missed class on November 11, the evidence indicates, by the fact that no code is listed under "job" on the payroll record, *See* Rusty Adair Second Affidavit at ¶ 10, that Baker worked at the mill rather than attending class on November 11, 1999, and so was paid for working, not for attending class. *See* IP 0182. According to IP, there was some question as to an absence of Baker in December. Adair states that when asked, instructor Wilford Holt informed Adair that Baker was tardy rather than absent from his Machine Shop Lab on December 9, 1999. *Id.* With regard to the November 15–18 absences, upon review of the payroll records, document IP 0182, the court finds no entry for compensation by Baker for November 15–18. Since all of the dates for which this court finds recorded absences from class or lab for Baker are either explained as not being absences, or as being absences for which compensation was not sought, this court must conclude that Smith and Baker were not similarly situated.

---

**9.** IP has actually provided evidence regarding the October 18 absence, citing to the document stamped IP0181 which indicates that

Baker was paid for a personal holiday on October 18.

### c. Terms in 2000

The employees identified by Smith as having falsified payroll records in the 2000 school terms are Ken Bailey ("Bailey"), Paul Browning ("Browning"), and Scott Carmichael ("Carmichael"). IP argues that there were no white employees allegedly paid for classes they failed to attend during 2000 who were similarly situated to Smith.[10] IP conducted audits of the Spring[11] and Fall 2000 terms.[12]

As to Bailey, IP cites to Adair's testimony wherein he states that his audit revealed that Bailey missed classes, but that Bailey did not claim compensation for class on any of those dates. Adair Second Affidavit at ¶ 11. Upon review of the documentary evidence, the court finds records of absences for Bailey on October 17 and October 24. *See* JP Tech 0860. Adair states in his affidavit that Bailey missed classes on January 24, October 17, October 23,[13] and November 24, but did not seek compensation for attending class for those days. *Id.* The court sees no entries on the payroll seeking compensation for January 24, IP 0152; or the October dates, *see* IP 0160–61; and November 24 is listed as the Thanksgiving holiday, IP 0162. The court cannot conclude, therefore, that Bailey, who was absent from class but did not seek compensation for having gone to class on those dates, and Smith are similarly situated.

According to this court's review of the records, Browning was absent from one of his classes on December 6, 2000 and received compensation on that day. Adair explains, however, that Browning attended two classes on December 6, and missed one class, and only requested payment for two, not three, classes. *Id.* at ¶ 11. Adair points out that Browning only entered 13.25 hours of classes for December 6. *Id.* at ¶ 12; IP 0343.

Without guidance from Smith, which is sadly lacking throughout, and which clearly seems to be because the records simply

---

**10.** IP does not contend that it had no knowledge of this information since it conducted an audit of the Spring and Fall 2000 terms. Because IP has not raised the issue of whether a prima facie case can be established based on comparators about whom the employer gained knowledge after the employment decision at issue in this case, but instead presents evidence to demonstrate that the comparators were not similarly situated, the court does not address this issue.

**11.** Smith has stated in his brief that class attendance records from the Spring 2000 Term have not been received by Smith, and so additional names may be added to the list. Whether evidence of persons' attendance in the program after Smith was terminated would be relevant or not, no evidence of white employees' attendance in Spring 2000 classes has been provided to the court, and Smith has not asked for additional time to produce such evidence. Without evidence of these employees' absences, the court has no evidence before it which to consider and summary judgment cannot be denied on this basis.

**12.** Although Smith has listed the names of three employees, it is unclear to the court whether Smith intended to limit his arguments regarding these employees to the Spring and Fall 2000 terms, or also intended to include the Summer 2000 term. Since Smith has not cited specifically to any records from the Summer 2000 term, and has provided no evidence to contradict that no audit was conducted of the Summer 2000 term, the court will not consider the Summer 2000 term. In addition, the only Summer 2000 record of which the court is aware is for Carmichael for the Automatic Control class and lists no absences. *See* J.P. Tech 00847.

**13.** IP states that the absence occurred on October 23. The absence of which this court is aware, indicated by an "E," occurred on October 24. *See* JP Tech 00860. The payroll record for Bailey, however, does not list October 24 as a day for which Bailey sought compensation. Even if Bailey missed another class on October 23, Bailey was compensated for having worked at the mill that day, not for attending class. *See* IP 0161.

do not substantiate Smith's contentions, this court's efforts to evaluate the documentary evidence are hampered. Nevertheless, the court has continued to plow through the documents. December 6 is indicated on the class rolls as being a Wednesday. Other Wednesdays in the class rolls fell on November 27, November 15, November 8, and November 1, for example. The payroll record for those Wednesdays indicate that Browning claimed 17.75 hours for each of those days. *See* IP 0343. But, as Adair points out, Browning claimed only 13.25 hours on December 6. Given this documentary evidence, which supports Adair's explanation that Browning did not claim compensation for more class hours than he attended, the court cannot conclude that Browning and Smith are similarly situated.

With regard to Carmichael as a comparator, the court's review of the documentary evidence reveals that Carmichael was absent from class on October 19. J.P. Tech 0861. Adair states that although Carmichael was absent from class on October 19, he did not enter any time into the payroll system for that day. *Id.* at ¶ 13. Although the payroll records provided by Smith to the court for Carmichael skip from 1999 to 2001 and do not include the relevant date, IP has provided a copy of Carmichael's pay roll records which indicates that he did not seek compensation on October 19. *See* IP 0387. Since the court has been cited to no evidence that Carmichael claimed compensation for a class date that he missed, the court cannot conclude that Carmichael and Smith were similarly situated.

### d. Spring and Fall 2001

 Smith has also sought to rely on evidence regarding several employees' attendance in 2001. It is apparently undis-

puted that no audit has been conducted by IP of any 2001 terms. "Disparate discipline cannot be shown without first showing that the employer was aware of the comparator's misconduct." *See Vickers v. Federal Express Corp.*, 132 F.Supp.2d 1371, 1380 (S.D.Fla.2000); *see also St. Hilaire v. The Pep Boys*, 73 F.Supp.2d 1366, 1371 (S.D.Fla.1999).[14] Furthermore, while Smith has stated that in addition to Bailey and Carmichael, three other white employees, Bowen, Jones, and Morrison were marked absent from classes in 2001, Smith admits that there is no evidence that they entered time in the payroll system for these classes because the payroll records from mid-February 2001 to the present have not been produced. Smith has not asked for additional time to provide this evidence to the court. In the absence of any such evidence, the court concludes that Smith has failed to demonstrate that he was similarly situated to any of these white employees/students based on 2001 attendance.

By way of summary, after reviewing all of the relevant documentary evidence cited to it regarding the attendance records and payroll records of purported comparators, this court must conclude that although Smith has advanced the broad generalization that there are multiple white employees who falsified their payroll records and were not terminated, the documentary evidence simply does not bear out that any of these white employees were similarly situated to Smith. Summary judgment is, therefore, due to be GRANTED based on Smith's failure to establish a prima facie case.

### 2. Pretext

Although the court has concluded that summary judgment is due to be granted

---

**14.** Even assuming that a prima facie case could be established for the only employee for whom attendance and corresponding payroll

evidence has been provided for 2001, i.e., Carmichael, the court will address the issue of pretext below.

on the basis of Smith's failure to establish a prima facie case of disparate treatment on the basis of race, the court alternatively concludes, as discussed below, that summary judgment is due to be GRANTED based on the full *McDonnell Douglas* analysis.

▇▇▇ IP has articulated the legitimate non-discriminatory reason for Smith's termination in January 2000 of falsification of 1999 payroll records. Smith argues that the record evidence that 13 other white employees/students falsified pay records without being terminated demonstrates that Smith's termination is a pretext for discrimination on the basis of race. Smith has also argued that he has consistently maintained that he did not miss the classes for which IP claims payroll records were falsified, and that the records of J.P. Tech. were unclear.

▇▇▇ The Eleventh Circuit has articulated two avenues by which an employee can prove pretext when terminated for violation of a work rule: (1) that the employee did not violate the work rule, or (2) that the employee did violate the work rule, but others who violated the rule were afforded more favorable treatment. *Damon v. Fleming Supermarkets of Florida, Inc.,* 196 F.3d 1354 (11th Cir.1999). As the *Damon* court explained, however, an employer who fires an employee under the mistaken but honest impression that the employee violated a work rule is not liable for discriminatory conduct. *Id.* at 1363 n. 3.

This court has previously had occasion to examine the distinction between the two prongs of the pretext inquiry in a work rule violation case. *See Strickland v. Prime Care of Dothan,* 108 F.Supp.2d 1329, 1334 (M.D.Ala.2000); *see also Sweeney v. Alabama Alcoholic Beverage Control Bd.,* 117 F.Supp.2d 1266 (M.D.Ala. 2000)(De Ment, J.). In *Strickland,* this court reasoned that the general rule is that

a plaintiff must do more than point to contradictory evidence that shows an employer may have been mistaken in its belief that the plaintiff committed the alleged infractions. *See Strickland,* 108 F.Supp.2d at 1333; *see also Elrod v. Sears, Roebuck & Co.,* 939 F.2d 1466, 1470 (11th Cir.1991). Therefore, where a decision maker relies on another's report that the plaintiff committed the work rule violation in question and fires him on that basis, the plaintiff is unable to demonstrate pretext merely by showing that the report is false. *See Elrod,* 939 F.2d at 1469 (holding that such facts do not establish pretext); *see also Hawkins v. Ceco Corp.,* 883 F.2d 977, 980 n. 2 (11th Cir.1989) (same). Instead, the plaintiff must establish pretext by pointing to evidence that suggests that the employer either did not rely on that report or that the employer did rely on the report but knew it was false. *Strickland,* 108 F.Supp.2d at 1333. It is only where the decision maker relies on its own personal knowledge of the work rule violation that the first prong applies and mere evidence disputing the violation will be sufficient to establish pretext. *See id.* Relying on similar reasoning, the court in *Sweeney* determined that a plaintiff who disputed that she violated the work rule did not establish pretext where the decision maker relied on the report of a supervisor in determining that the plaintiff violated a work rule. *Sweeney,* 117 F.Supp.2d at 1273.

▇▇▇ In this case, IP conducted an audit comparing J.P. Tech attendance records for Smith with IP's payroll records for Smith. IP then interviewed Smith's J.P. Tech instructors who recorded the attendance records, and was assured that Smith was absent from the relevant classes. Adair First Affidavit at ¶ 7. IP also received signed letters from the instructors stating that Smith was absent

from the relevant classes. *Id.* This court must conclude, therefore, that Smith's unsupported position that he did not miss the classes for which he sought compensation does not establish that the employer's stated reliance on outside evidence [15] to the contrary is pretextual. *Smith v. Papp Clinic,* 808 F.2d 1449, 1452, 1453 (11th Cir.1987)(stating that firing a plaintiff under an honest though mistaken belief that the employee violated a company policy did not violate § 1981). The court must also conclude that although Smith has argued that the attendance rolls were inconsistent and subject to inaccuracies, there has been no evidence provided which would indicate that IP did not rely on the attendance rolls in making its determinations, or knowingly relied on false information in its decisions regarding employees Smith has identified as comparators. *See Lewis–Calhoun v. City of Jackson,* 977 F.Supp. 1148, 1154 (S.D.Ala.1997)(whether or not employer should have relied on recommendation, the plaintiff's evidence did not create a basis to disbelieve the explanation that the employment decision was based on the unfavorable recommendation), *aff'd without opinion,* 152 F.3d 935 (11th Cir.1998); *see also Hawkins,* 883 F.2d at 980 n. 2 ("A lack of concern about the accuracy of a decision will not establish pretext as a matter of law.").

■ As to the second prong for establishing pretext in a work rule violation case, for the reasons discussed above, the court cannot conclude that Smith's evidence demonstrates that any similarly-situated white employees were treated more favorably than Smith. In addition, with regard to any claim based on records of any 2001 terms, including records for Carmichael as a comparator; the records of any summer terms, including records for Pugh as a comparator in 1999; or based on

any records of terms prior to the Fall 1999 term, Smith has also failed to establish pretext because, as previously discussed, IP's audit included only the Fall 1999 and Spring and Fall 2000 terms. Smith's reliance on evidence from terms for which no audit has been conducted is unavailing because pretext cannot be established with evidence of conduct of which the employer was not aware. *Silvera v. Orange County School Bd.,* 244 F.3d 1253, 1254 (11th Cir. 2001). In other words, Smith cannot establish discrimination based on a contention that white employees were not terminated for conduct similar to the conduct he is accused of when there is no evidence that the employer was aware that the white employees had engaged in that conduct. Therefore, with regard to evidence from terms not audited by IP, summary judgment is be due to be GRANTED on this alternative ground.

**B. Remaining Claims**

■ IP also moves for summary judgment on claims for discrimination by denial of training and for civil conspiracy. Smith does not respond to IP's motion with regard to these claims in any way. Accordingly, the claims for denial of training and civil conspiracy are abandoned and summary judgment is due to be GRANTED. *Resolution Trust Corp. v. Dunmar Corp.,* 43 F.3d 587, 599 (11th Cir.1995). In the alternative, to the extent that Smith intended to pursue these claims, because Smith has not met his burden in responding to IP's properly supported motion on these claims, summary judgment is due to be GRANTED as to these claims. Fed. R.Civ.P. 56(e).

**V. CONCLUSION**

As was discussed above, the Motion for Summary Judgment is due to be GRANT-

---

**15.** Smith has alleged a claim for civil conspiracy between IP and J.P. Tech, but has not presented any evidence to support such a claim.

ED as to Smith's Title VII and § 1981 claims for discrimination on the basis of race and his claim for civil conspiracy. A separate Order will be entered in accordance with this Memorandum Opinion.[16]

### ORDER AND JUDGMENT

In accordance with the Memorandum Opinion entered on this date, the Motion for Summary Judgment (Doc. # 52) is ORDERED GRANTED and judgment is entered in favor of the Defendant, International Paper Company and against the Plaintiff, Jerome Smith on all of Jerome Smith's claims.

It is further ORDERED that Paper, Allied–Industrial, Chemical and Energy Workers International Union, a/k/a Pace International Union, is DISMISSED as an additional defendant.

Costs are taxed against the Plaintiff.

---

16. In view of this Memorandum Opinion, the additional Defendant is due to be Dismissed.