[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 09-12585
Non-Argument Calendar
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
DECEMBER 10, 2009
THOMAS K. KAHN
CLERK

D. C. Docket No. 08-00143-CV-KD-M

PAUL ROY SMITH, III,

Plaintiff-Appellant,

versus

SUNBELT RENTALS, INC.,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Southern District of Alabama
_____

(December 10, 2009)

Before BIRCH, CARNES and MARCUS, Circuit Judges.

PER CURIAM:

Paul Roy Smith ("Smith"), a Caucasian male, appeals from the district

court's grant of summary judgment in favor of Sunbelt Rentals, Inc. ("Sunbelt") in his employment discrimination suit under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2(a). Smith argues that the district court committed reversible error when it found that he did not establish a prima facie case of discrimination. After reviewing the record, we AFFIRM the judgment of the district court.

## I. BACKGROUND

Sunbelt employed Smith as an outside sales representative at its Profit Center in Mobile, Alabama from November 1998 through 26 July 2007. Doc 1 at 2. Smith's discrimination complaint stems from Sunbelt's discipline and ultimate termination of his employment. Id. In his complaint, Smith alleged that in March 2007, Cory Colley ("Colley"),[1] an African-American Sunbelt employee, was found with a firearm in his truck in violation of Sunbelt's zero-tolerance firearm's policy. Id. He further alleged that during Sunbelt's investigation of the incident, Colley falsely accused Smith of making a racially derogatory remark. Id. Smith admitted referring to Colley as "ya'll" but contended that the word cannot be reasonably construed as racial. Id. Smith alleged that in July 2007, he was advised by his supervisors of an "outside complaint of harassment" against him, but was not given any further information regarding the complaint. Id. Smith alleged that he was

---

[1] Cory Colley is referred to both as "Colley" and "Cooley" throughout the record but signed his name as Colley on a Sunbelt warning form. (Doc. 33 at Exh. 7).

ultimately fired by Sunbelt in an "extremely unfair and racially discriminatory manner, as similarly situated African-American employees, including Cory Co[l]ley, were not punished for similar or worse alleged misconduct." Id. at 3. Sunbelt filed an answer denying the allegations and asserting several defenses. Doc. 9.

After discovery, Sunbelt filed a motion for summary judgment, and argued that Smith's reverse discrimination claim failed because he could not establish a prima facie case of reverse race discrimination. Doc. 23 at 8-11. Sunbelt argued that Smith could not establish a comparator necessary for his prima facie case because he could not identify another employee of similar standing who engaged in similar conduct. Id. at 10. Sunbelt argued that Colley, the alleged comparator, engaged in a different act of misconduct, held a different rank, and had different job responsibilities compared to Smith. Id. at 10-11. Sunbelt concluded that because Smith could not establish a prima facie case of race discrimination, it was entitled to summary judgment. Id. at 11-12.

In support of the motion for summary judgment, Sunbelt submitted several depositions. Doc. 24. Regarding the March 2007 incident, Dan Bernard ("Bernard"), a Sunbelt District Manager, testified that David Ladd ("Ladd"), Smith's direct supervisor, informed him that Colley complained Smith had used a

3

derogatory racial slur. Id. at Exh. 2, Dan Bernard Depo. at 12. The incident began with Smith preparing a company form to demonstrate to a Sunbelt driver the correct way to complete it. Id. at 13-14; Doc. 24 at Exh. 1, Paul Smith Depo. at Exh. 7. Bernard testified that because the driver at issue was not present, Smith showed the form to Colley and had written on it in large letters, "What It Is." Doc. 24 at Exh. 2, Dan Bernard Depo. at 14; Doc. 24 at Exh. 1, Paul Smith Depo. at Exh. 7. When Colley asked Smith what he meant by "what it is," Smith responded to him, "you know, what it is. You talk like that, don't you." Doc. 24 at Exh. 2, Dan Bernard Depo. at 14. Colley asked Smith, "y'all, who's y'all?" and Smith replied, "you know, y'all." Id. Colley pressed Smith further about what he meant by "y'all" and Smith replied "you know, people." Id. Bernard further testified that he completed an investigation of the incident during which he interviewed Smith, Colley, and others who witnessed the exchange. Id. at 12-13. Bernard testified that the tone and the way the words were used was determined to be racially offensive. Id. at 16.

Bernard testified that prior to the March 2007 exchange with Smith, Colley had been found with a gun in his truck on company property in violation of Sunbelt's policy and was given a written warning. Id. at 27. Bernard testified that the minimal treatment would have been a verbal warning and that the severity of

4

the discipline for such an offense depends on the severity of the incident.  Id. at 28. Bernard stated that, for example, having a gun in a truck is not as severe as an employee bringing a gun into the place of business.  Id.

Bernard further testified that after Colley complained about the March 2007 incident, he and other supervisors met with Smith to let him know he would receive a two-day suspension as a result of his behavior and the inappropriate words he used towards Colley.  Id. at 35.  During this meeting, Smith was also warned that his behavior in a prior incident with Brandy Reese ("Reese"), a female co-worker, was unacceptable.  Id.  Russ Brown ("Brown"), another supervisor, testified that approximately 2 years before the incident with Colley, Smith had interacted with Reese in a way that was chauvinistic and overall demeaning to her. Doc. 24 at Exh. 4, Russ Brown Depo. at 24.

Regarding the July 2007 incident, Larry Cook ("Cook"), a member of Sunbelt management, testified that Sunbelt terminated Smith for unacceptable conduct following an incident involving a competitor's salesman, Gary Fisher ("Fisher").  Doc. 24 at Exh. 5, Larry Cook Depo. at 16-17.  Evidence showed that when Smith and Fisher were both driving on the interstate, Smith swerved in and out of the lane in front of Fisher.  Id. at 13-14.  Fisher further complained that Smith later slowed down, pulled his vehicle behind Fisher's, and bumped his front

5

bumper against Fisher's rear bumper.  Id. at 14.  Fisher stated that he pulled his vehicle over and confronted Smith but that Smith was uncooperative.  Id.  Cook testified that after meeting with Fisher and his company, the decision was made to terminate Smith.  Id. at 14-15.  Cook testified that while the March 2007 incident played a part, his understanding was that Smith was fired based on the July 2007 incident involving Fisher.  Id. at 17.

Following receipt of the summary judgment notice, Smith filed an opposition brief.  He did not expressly address whether he committed a work-rule violation, or contest the July 2007 incident deposition details, but instead claimed that Bernard admitted appropriate uses exist for the words "ya'll" and "what it is." Doc. 32 at 4.  Regarding the discipline he received for making the remarks, he argued that evidence established he was treated less favorably than Colley, an African-American.  Id. at 10.  Smith argued that evidence showed out of two work place "policy violations arising out of the same incident, the white employee [Smith], received substantial punishment for a highly questionable grounds, and the African-American employee [Colley] received very minimal punishment."  Id. at 12.  Smith also argued that the reason given by Sunbelt for his March 2007 discipline was "implausible" because Bernard stated that "what it is" would be appropriate to write in the section of the document where Smith wrote those words.

6

Id. at 11. Smith claimed that the only plausible explanation was his supervisors "were afraid of a race lawsuit from Colley," which constitutes a discriminatory motive for disciplining him. Id. at 11. Smith alleged that the evidence established a "history of spe[]cial and unfair treatment afforded to African-Americans at the Sunbelt workplace." Id. at 12. Finally, Smith argued that Sunbelt's purported explanation for disciplining him was a pretext for its true discriminatory reasons. Id. at 13-15. Smith claimed that the substantial inconsistencies and implausibilities of Sunbelt's explanations were enough to establish pretext. Id. at 14-16.

Smith's opposition brief cited several depositions and exhibits. Doc. 33. In his deposition, Bernard admitted that prior to the March 2007 incident, Smith was a "good employee." Id. at Exh.11, Dan Bernard Depo. at 8. Bernard also admitted that Smith's own description of how he used the phrase "ya'll" would be acceptable, that there were acceptable uses of the term, and that the use of the phrase "what it is" could be used to accurately convey what should go in the description section of the form at issue. Id. at 65-66.

According to Smith's warning form and its attachment for his March 2007 discipline, the incidents involving Colley's possession of a firearm and Smith's alleged racial remarks occurred at approximately the same time and were reported together. Id. at Exh. 1-2. During deposition, Bernard confirmed that under

Sunbelt's policy, possession of a firearm was considered a serious action and could result in immediate discharge, but Colley received only a written warning for his conduct. Id. at Exh. 11, Dan Bernard Depo. at 27-30. In contrast, however, Bernard admitted that Smith was given a suspension for his remarks without prior written warning. Id. at 35.

In his deposition, Smith testified that Colley only complained about Smith's "ya'll" comment after a gun was found in his car and he was facing termination under Sunbelt's zero tolerance policy for firearms on company property. Id. at Exh. 10, Paul Smith Depo. at 113-15; 119-24. Smith also testified that Brown, Bernard, and Cook told him that Sunbelt was afraid Colley would bring a race discrimination lawsuit against the company. Id. at 59. Further, Smith claimed that Sunbelt's action of disciplining him was an attempt to appease Colley, and that other Sunbelt employees commonly used the phrase "ya'll," including when speaking to Colley, but they were never punished. Id. at 138-40.

Smith testified that there was another African-American driver besides Colley that would "never show up" to work but was not disciplined. Id. at 145. Smith stated that Sunbelt's timekeeper told him that the two African-American drivers arrived late to work but adjusted their time-cards to make them appear on time and would take their lunch breaks late because they "did not want to go on

8

another run." Id. at 147-148. Smith testified that Colley went unpunished for objectionable behavior; specifically, that Colley "could do no wrong and that [Colley] could get away with coming in late, not showing up, falsifying time cards, throwing a fit, violent behavior, threatening to kill somebody, OSHA being called, Human Resources being called, and nothing is done to him." Id. at 132. Smith also tendered a copy of Sunbelt's Termination Notice, which was issued after the July 2007 incident and specifically stated that Smith's termination was "based on conduct after formal warning" in March. Id. at Exh. 6 (emphasis added). Cook testified that while Smith was terminated based on his conduct in July 2007, the March 2007 incident did play a part. Id. at Exh. 9, Larry Cook Depo. at 17.

The district court found that Smith was unable to establish a prima facie case of employment discrimination because he did not identify another Sunbelt employee who engaged in the same or similar conduct and was treated differently. Doc. 35 at 19. The district court found that there was only one contested element of Smith's prima facie case: whether, a similarly situated, African-American employee committed the same violations as Smith, a Caucasian employee, but did not suffer the same adverse employment action. Id. at 20. The district court found that because Smith did not dispute his termination in July 2007, and because there was no evidence that it was discriminatory, the analysis in this case was limited to

9

the March 2007 incident.  Id. at 20-21.  Although the district court did not make a finding with regard to whether Smith committed a work-rule violation, it found that Smith was not involved in, or accused of, the same or similar conduct as Colley, and disciplined in a different way.  Id. at 19-25.

The district court found that even if Smith's allegations – that other Sunbelt employees, including Colley, used the terms "ya'll" or "what it is" – were true, Smith presented no evidence to show that any employees complained to Sunbelt that the use of those words were derogatory in nature.  Id. at 22.  Further, the district court found that none of the alleged behavior for which African-American employees were either not punished or punished differently for, was similar to Smith's conduct of making discriminatory or harassing remarks, and that it was undisputed that Colley and Smith did not have a similar rank or similar job responsibilities.  Id. at 23.  The district court thus concluded that Smith had not identified a valid comparator to establish his prima facie case.  Id. at 24-25.

On appeal, Smith argues that he established a prima facie case of race discrimination two different ways.  First, he argues that he did not commit the first alleged work-rule violation (the March 2007 incident).  Second, he argues in the alternative, that his misconduct was similar to that of Colley's, and that the disciplinary measures enforced against Colley were less severe than those enforced

10

against him.

## II. DISCUSSION

We review a district court's grant of summary judgment de novo, viewing all of the facts in the record in a light most favorable to the non-moving party and drawing all inferences in his favor. Frederick v. Spring/United Mgmt. Co., 246 F.3d 1305, 1311 (11th Cir. 2001). "Summary judgment is only proper if there are no genuine disputed issues of material fact, and the moving party is entitled to judgment as a matter of law." Id.

Title VII prohibits employers from discriminating against employees on the basis of race. See 42 U.S.C. § 2000e-2(a) (2003). To establish a prima facie case for disparate treatment in a race discrimination case, the plaintiff must show that:

> (1) [the plaintiff] is a member of a protected class; (2) [the plaintiff] was subjected to an adverse employment action; (3) [the plaintiff's] employer treated similarly situated employees outside of [the] protected class more favorably than [he] was treated; and (4) [the plaintiff] was qualified to do the job.

Burke-Fowler v. Orange County, 447 F.3d 1319, 1323 (11th Cir. 2006) (per curiam). When a plaintiff alleges discriminatory discipline, the plaintiff "must show either (a) that he did not violate the work rule, or (b) that he engaged in misconduct similar to that of a person outside the protected class, and that the disciplinary measures enforced against him were more severe than those enforced

11

against the other persons who engaged in similar misconduct." Jones v. Gerwens, 874 F.2d 1534, 1540 (11th Cir. 1989).

A. Whether Smith Established a Prima Facie Case by Proving he Did Not Commit the March 2007 Work-Rule Violation

Citing part (a) of Jones, Smith argues on appeal that he established a prima facie case of race discrimination by showing that he did not commit the March 2007 work-rule violation at issue. This argument raises a few issues. First, Smith does not contest the work-rule violation in July 2007, and it is unclear whether the March 2007 incident was the controlling reason for Smith's termination. Second, Smith admits the conduct involved in the March 2007 incident, and only contests whether the remarks constituted harassment. Third, and as an initial controlling matter, Sunbelt argues that Smith did not raise this argument at the district court and it would thus be improper for us to consider the argument on appeal.

"A general principle of appellate review is that an appellate court will not consider issues not presented to the trial court. Judicial economy is served and prejudice avoided by binding the parties to the theories argued below." McGinnis v. Ingram Equip. Co., Inc., 918 F.2d 1491, 1495 (11th Cir. 1990) (en banc) (quotation marks and citation omitted). Arguments that were available at the time of trial or the time of appeal are not "new" law that may be raised at a late stage in

12

the proceedings. See id. at 1495-97. To preserve an objection for appeal, the defendant "must raise that point in such clear and simple language that the trial court may not misunderstand it. When the statement is not clear enough to inform the district court of the legal basis for the objection, we have held that the objection is not properly preserved." United States v. Massey, 443 F.3d 814, 819 (11th Cir. 2006) (quotation marks and citation omitted).

In his complaint, Smith states that his termination "was done by Sunbelt in an extremely unfair and racially discriminatory manner, as similarly situated African-American employees, including Cory Cooley, were not punished for similar or worse alleged misconduct." Doc 1 at 3. The complaint clearly addresses the similarly situated / comparator requirement of establishing a prima facie case and does not allege that Smith did not commit the work-rule violation to establish a prima facie case.

Sunbelt's motion for summary judgment argued that Smith could not establish a comparator necessary for his prima facie case because he could not identify another employee of similar standing who engaged in similar conduct. Doc. 23. Smith's brief in opposition to Sunbelt's motion for summary judgment argued that Colley was a necessary comparator for the purposes of establishing his prima facie case. In no way did Smith argue that he did not commit a work-rule

13

violation in March 2007 for the purposes of establishing his prima facie case.

Smith does cite Smith v. International Paper Co., 160 F.Supp. 2d 1335 (M.D. Ala. 2001), for the proposition that "for a case of discrimination based on an alleged work rule violation, pretext can be shown by the Plaintiff demonstrating that the violation did not occur," Doc. 32 at 14 (emphasis added), however, he makes this argument strictly in the context of establishing pretext.[2]

The district court opinion is clear that Smith did not establish a prima facie case solely due to the absence of a valid comparator. Doc. 35 at 19 ("For purposes of this motion, there is only one contested element of Plaintiff's prima facie case: whether a similarly situated, African-American employee committed the same violation as Plaintiff, a Caucasian employee, but did not suffer the same adverse employment action."). The district court did not consider whether Smith did or did not violate Sunbelt's work-rule in March 2007 for the purposes of establishing a prima facie case.

When an argument is not clear enough to inform the district court of the legal basis for the objection, we have held that the objection is not properly preserved for appeal. Massey, 443 F.3d at 819. In this case, Smith did not even

---

[2] In its district court summary judgment brief, Sunbelt argued that even if Smith can make out a prima facie case, Sunbelt had a legitimate, non-discriminatory reason for Smith's termination. Smith's brief in opposition to summary judgment countered this non-discriminatory-reason argument by arguing that Sunbelt's explanation is pretext.

raise the issue before the district court. Accordingly, we will not address the issue.

 B. <u>Whether Smith Established a Prima Facie Case by Establishing a Valid</u>

<u>Comparator</u>

Citing part (b) of <u>Jones,</u> Smith argues in the alternative on appeal that he

established a <u>prima facie</u> case of race discrimination by proving that he was treated

less favorably than Colley, an African-American. As stated in <u>Jones</u>, to establish a

<u>prima facie</u> case, a plaintiff must show "that he engaged in misconduct similar to

that of a person outside the protected class [a comparator], and that the disciplinary

measures enforced against him were more severe than those enforced against the

[comparator]." <u>Jones</u>, 874 F.2d. at 1540. "We require that the quantity and quality

of the comparator's misconduct be nearly identical to prevent courts from second-

guessing employers' reasonable decisions[.]" <u>Maniccia v. Brown</u>, 171 F.3d 1364,

1368 (11th Cir. 1999); <u>see also</u> <u>Holifield v. Reno</u>, 115 F.3d 1555, 1562 (11th Cir.

1997) (per curiam) (stating that to make a comparison, the plaintiff must show that

he and the comparable employee are "similarly situated in all relevant respects").

We do "not sit as a super-personnel department that reexamines an entity's

business decisions," but the "inquiry is limited to whether the employer gave an

honest explanation of its behavior." <u>Chapman v. AI Transp.</u>, 229 F.3d 1012, 1030

(11th Cir. 2000) (<u>en banc</u>) (quotation marks and citation omitted).

15

There is no evidence that the disciplinary action taken in July 2007 was discriminatory. Smith's prima facie case under part (b) of Jones is that but for the wrongful March 2007 discipline, Smith would not have been terminated for the valid July 2007 complaint. Accordingly, we restrict our comparator analysis to the March 2007 incident.

According to Jones, Smith must show (1) that he engaged in misconduct similar to that of a comparator, and (2) that the disciplinary measures enforced against him were more severe than those enforced against the comparator. Uncontested facts reveal that Smith was given a two-day suspension for making allegedly racially discriminatory remarks to Colley, and Colley was given a written warning for having a firearm in his vehicle on work property. While a written warning is less severe than a two-day suspension, racially discriminatory behavior is fundamentally different than possession of a firearm. We require the misconduct at issue to be "nearly identical." Maniccia, 171 F.3d at 1368. While Smith accuses Colley and another African-American employee of various work rule violations for which they received minimal or no punishment, Smith himself describes none of the alleged work rule violations by African-Americans as similar to his alleged racially derogatory misconduct. In addition to the differences in conduct, Smith and Colley, as well as the other African-American driver Smith accuses of

misconduct, held a different rank and had different job responsibilities.  We thus conclude that Smith has not identified any other Sunbelt employee – including Colley – who made a racially discriminatory remark to a co-employee or who engaged in similar conduct from which to establish a prima facie case.

### III. CONCLUSION

Smith appeals from the district court's grant of summary judgment arguing that the district court committed reversible error when it found that he did not establish a prima facie case of discrimination through not violating a work-rule or engaging in misconduct similar to that of a person outside the protected class.  As we have explained, Smith is precluded from arguing that he did not violate a work-rule because he did not raise the argument before the district court, and the district court did not err in finding that Smith could not establish a valid comparator to support his prima facie case.  Accordingly, the summary judgment granted by the district judge is AFFIRMED.

**AFFIRMED.**