Terry ROBERTS, Plaintiff,

v.

RAYONIER, INC. a foreign corporation, and John P. O'Grady, Defendants.

No. 3:03–CV–55–J–25TEM.

United States District Court, M.D. Florida, Jacksonville Division.

July 9, 2004.

David B. Sacks, Law Office of David B. Sacks, Jacksonville, FL, for Plaintiff.

Michael Gregory Prendergast, Patrick Daniel Coleman, Coffman, Coleman, Andrews & Grogan, P.A., Jacksonville, FL, for Defendants.

### ORDER

ADAMS, District Judge.

**THIS CAUSE** is before this Court on Defendant Rayonier Inc.'s ("Defendant" or "Rayonier") Motion for Summary Judgment, Request for Attorneys' Fees, and Request for Oral Argument and Memorandum in Support (Dkts. 51 and 52), Plaintiff's response thereto (Dkt. 72), Plaintiff's ("Plaintiff" or "Roberts") Motion for Partial Summary Judgment and Request for Oral Argument (Dkt. 54), and Defendant's response thereto (Dkt. 73). Upon consideration, and after having reviews the depositions, affidavits and pleadings filed by the parties this Court finds as follows:

In the Second Amended Complaint (Dkt. 32), Plaintiff sets forth the following causes of action: in Count I a claim pursuant to Title I of the Americans with Disabilities Act ("ADA") of 1990, 42 U.S.C. § 12101 et seq. ("ADA") for disability discrimination and for retaliation against Rayonier; in Count II a claim against Rayonier for violation of the ADA's testing provision, 42 U.S.C. § 12112(d) and 42 U.S.C. § 12203; in Count III a claim against Rayonier pursuant to the Florida Civil Rights Act of 1992, § 760.01 et seq. ("FCRA") for disability discrimination.[1]

### I. Background Facts[2]

Plaintiff began his employment with Rayonier Inc. in 1983, in Washington, as Labor Relations Manager. In 1993 or 1994, Plaintiff became Director, Labor Relations and Counsel. This job required Plaintiff possess a law degree and maintain an attorney-client relationship with Defendant.[3] In fulfilling the responsibilities of the position, Plaintiff represented Defendant at arbitrations, in EEOC proceedings, and as co-counsel with outside counsel in employment litigation. Plaintiff was also tasked with advising Defendant's Senior Vice–President, Administration, John P. O'Grady.

Beginning in late 1996 or early 1997, O'Grady counseled Plaintiff on alcohol related issues. Plaintiff's drinking was affecting his ability to perform his responsibilities at Rayonier. Despite the counseling, Plaintiff received "excellent" performance ratings each year from 1993–1999. In 2000, following reports that Plaintiff reported late to work and smelled of alcohol, Plaintiff's evaluation dropped to "acceptable." Plaintiff, nevertheless, received a 3.1% salary increase and a $35,000.00 bonus.

In April of 2000, Plaintiff was transferred from Washington to Jacksonville, Florida. In connection with his transfer, Plaintiff signed a "Last Chance Agreement" in which he acknowledged that fur-

---

**1.** Other counts within the Amended Complaint have been dismissed by this Court in a prior Order. (Dkt. 96).

**2.** This Court's utilization of the word "facts" is solely for purposes of deciding the summary judgment motion and are not necessari-

ly the actual facts. See Kelly v. Curtis, 21 F.3d 1544, 1546 (11th Cir.1994) (citation omitted).

**3.** Plaintiff is a member of the Texas and Washington bars.

ther instances of alcohol related misconduct would result in his termination. Plaintiff, additionally, agreed to seek professional help. From that date until Plaintiff's termination, June 4, 2001, there were no further alcohol-related incidents from Plaintiff.

For at least the past 20 years, Defendant and its predecessor have used a skills assessment which is purported to determine employees' strengths and weaknesses and to assist in placing employees in their proper roles within the company. All executive employees, level 19 and above, are required to take the assessment. For an unknown reason, Plaintiff was never required to take the assessment when his position was upgraded to level 19 in 1989 or 1990. O'Grady became aware of this oversight, in late 2000 or early 2001, and told Plaintiff that he needed to be assessed. O'Grady arranged for the assessment to be scheduled the next time the assessor, Robert Crisera, Ph.D., traveled to Jacksonville. Plaintiff expressed reservations to O'Grady that he considered the assessment to be intrusive, not cost justified, not confidential, and not predictive of success.

On May 18, 2001, Plaintiff approached O'Grady with two letters. The first letter, from Plaintiff's doctor, stated the assessment would be "adverse" to Plaintiff's physician-patient relationship. (Dkt. 72, Ex. 16). The second letter, from attorney Archibald Thomas, stated that Thomas represented Plaintiff and asked that the assessment be canceled as an ADA accommodation.[4] (Dkt. 72, Ex. 15).

O'Grady was disappointed at being presented with Thomas' letter and told Plaintiff so. O'Grady, however, took the request under advisement and sought advice

from Rayonier's outside counsel, Guy Farmer. Following conversations between Farmer and Thomas, it was arranged for Crisera to speak with Plaintiff's doctor. Eventually, a decision was made and conveyed to Plaintiff that the assessment would be postponed until it would no longer interfere with Plaintiff's treatment.

On May 23, 2001, Farmer informed O'Grady of a conversation that he had with Plaintiff's attorney, Thomas. Thomas told Farmer that Plaintiff and Thomas consulted from time to time concerning problems with employees. O'Grady believed this to be a breach of confidentiality and grounds for Plaintiff's termination. O'Grady recommended such action to Lee Nutter, Rayonier's CEO. Nutter would not approve the termination without the approval of Jill Witter, Rayonier's Vice President and General Counsel. O'Grady contacted Witter and informed her about the assessment, the presentation of the letters, and the breach of confidentiality. Witter instructed O'Grady to confirm the breach of confidentiality with Farmer and if confirmation was received she would concur with the termination. Either before or after the Witter conversation, O'Grady asked Farmer to confirm the conversation with Thomas in writing; Farmer did so. The pertinent portions of that letter states:

> This is to confirm the telephone conversation we had yesterday during which I informed you that during my telephone call with Archibald Thomas. . . .

> My conversation with Thomas also touched on the fact that Terry Roberts having employed counsel had eroded your confidence in him. Archie [Thomas] said that it should not do that and

---

**4.** Thomas and other lawyers in his firm had represented employees against Rayonier in the recent past.

mentioned that he knew Terry somewhat in that he had from time to time consulted with Terry about problems with employees. (Dkt. 72, Ex. 20). Nutter concurred with the termination recommendation, and Plaintiff's employment with Rayonier was terminated on June 4, 2001, effective June 13, 2001.

## II. Standard of Review

In Defendant's motion for summary judgment, Defendant contends: 1) Plaintiff cannot establish a *prima facie* claim for retaliation; 2) even assuming, *arguendo,* that Plaintiff has established a *prima facie* case for retaliation, Defendant is entitled to summary judgment under a mixed-motive defense; 3) evidence of Plaintiff's post-termination ethical breaches should limit Plaintiff's relief; and 4) Plaintiff is unable to establish the essential elements of the ADA or FCRA claims for discrimination. Plaintiff, in his motion for partial summary judgment, seeks a determination that Defendant, in violation of the ADA, sought to require Plaintiff to submit to a medical examination and when Plaintiff refused his employment was terminated.[5]

Summary judgment is proper if following discovery, the pleadings, depositions, answers to interrogatories, affidavits, and admissions on file show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); Fed.R.Civ.P. 56. The movant "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,'

which it believes demonstrate the absence of a genuine issue of material fact." *Celotex,* 477 U.S. at 323, 106 S.Ct. 2548. Once the movant has met his burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions of file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex,* 477 U.S. at 324, 106 S.Ct. 2548 (quoting Fed. R.Civ.P. 56(e)).

This Court recognizes that it may not decide a genuine factual dispute at the summary judgment stage. *Fernandez v. Bankers National Life Ins. Co.,* 906 F.2d 559, 564 (11th Cir.1990). A dispute about a material fact is genuine, and summary judgment is inappropriate, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Haves v. City of Miami,* 52 F.3d 918, 921 (1995). Of course, the district court must view all evidence most favorably toward the nonmoving party, and all justifiable inferences are to be drawn in the nonmoving party's favor. *Whatley v. CNA Ins. Cos.,* 189 F.3d 1310, 1313 (11th Cir.1999). If the district court finds, under the relevant standards, that reasonable jurors could find a verdict for the nonmoving party since a disputed factual issue exists, judgment should be denied. However, there must exist a conflict in substantial evidence to pose a jury question. *Walker v. NationsBank of Florida N.A.,* 53 F.3d 1548, 1555 (11th Cir. 1995) (quoting *Verbraeken v. Westinghouse Electric Corp.,* 881 F.2d 1041, 1045 (11th Cir.1989)).

## III. Legal Analysis

### A. Retaliation

Plaintiff's retaliation claim is that his employment was terminated as a result of

---

**5.** This Court need not separately address Plaintiff's FCRA claims since "causes of action under the FCRA are examined using the same framework as the ADA." *Downing v. United Parcel Service, Inc.,* 215 F.Supp.2d 1303, 1308 (M.D.Fla.2002).

his request that the skills assessment be cancelled as an ADA accommodation. Defendant maintains that once it was learned that Plaintiff breached his duty of confidentiality, Defendant was entitled to terminate Plaintiff's employment.

■ Plaintiff must prove Defendant acted with retaliatory intent in order to prevail on a claim of retaliation under the ADA. When, as in this case, there is an absence of "direct evidence of discrimination, we apply the burden shifting framework established by the Supreme Court in *McDonnell Douglas Corp. v. Green* ... for evaluating Title VII retaliatory discharge claims." *Brungart v. BellSouth Telecommunications, Inc.*, 231 F.3d 791, 798 (11th Cir.2000) (citation omitted).[6] In order to establish a *prima facie* case of retaliation under the *McDonnell Douglas* analysis, "a plaintiff must show that (1) she engaged in statutorily protected conduct; (2) she suffered an adverse employment action; and (3) there is a causal connection between the protected conduct and the adverse employment action." *Brungart*, 231 F.3d at 798. Once a plaintiff "makes out a prima facie case, the burden shifts to the defendant to articulate a legitimate reason for the adverse action. If the defendant does so, the plaintiff must show the defendant's proffered reason for the adverse action is pretextual." *Smith v. BellSouth Telecommunications, Inc.*, 273 F.3d 1303, 1314 (11th Cir.2001).[7]

Initially, this Court notes that Defendant proceeds directly into an affirmative defense without first addressing the *McDonnell Douglas* framework. For this reason, this Court will not address the merits of Plaintiff's *prima facie* case. This Court will assume, *arguendo,* that Plaintiff has satisfied that burden. Defendant's position that Plaintiff's employment was terminated for the unauthorized disclosure of confidential information is a legitimate reason for his termination.

■ Plaintiff is then shouldered with the responsibility of demonstrating that Defendant's proffered reason for the adverse action is pretextual. Plaintiff attempts to establish pretext by asserting that a similarly situated employee, specifically Kenneth Demarko, was treated differently than was Plaintiff.

In determining whether employees are similarly situated for purposes of establishing a *prima facie* case, it is necessary to consider whether the employees are involved in or accused of the same or similar conduct and are disciplined in different ways. The most important factors in the disciplinary context are the nature of the offenses committed and the nature of the punishments imposed. We require that the quantity and quality of the comparator's misconduct be nearly identical to prevent courts from second-guessing employers' reasonable decisions and confusing apples with oranges.

*Maniccia v. Brown,* 171 F.3d 1364, 1368 (11th Cir.1999)(internal citations omitted).

Plaintiff asserts that Demarko "was terminated by defendant for allegedly disclosing confidential information and for improper use of company email .... The defendant investigated the allegations against Demarko by interviewing him and allowing him to give a written statement.

---

**6.** Plaintiff has made no attempt to establish retaliation by either direct evidence or statistical evidence.

**7.** By solely addressing this claim from Defendant, this Court need not determine, among other issues, whether the analysis from *Douglas v. DynMcDermott Petroleum Operations Co.*, 144 F.3d 364 (5th Cir.1998) is applicable to this case.

The defendant also had actual documentary evidence of Demarko's disclosure of information." (Dkt. 72, pg. 14). Plaintiff asserts that unlike Demarko, Plaintiff was not given an opportunity to provide a written statement nor was there "actual proof" of disclosure of the confidential information.

In both the Demarko and the instant cases both individuals were interviewed regarding the allegations against them and permitted to explain their actions. Additionally, Defendant investigated each case. Demarko's misconduct and Plaintiff's are not identical. But even assuming, *arguendo,* that the misconduct was identical, both Plaintiff and Demarko's employment was terminated. The suggested distinction in the manner in which the two cases were handled by Rayonier is *de minimus.* Accordingly, this Court concludes that Plaintiff has failed to carry his burden under the *McDonnell Douglas* framework.

Moreover, Defendant asserts an affirmative defense; a mixed-motive defense. Defendant asserts that even if Plaintiff were able to show that Plaintiff act of engaging in protected conduct was "a motivating factor for his termination, [Defendant] should still prevail under a 'mixed motive' defense." (Dkt. 52, pg. 14).

■ A mixed-motive defense remains a viable defense to retaliation claims.[8] The Eleventh Circuit has characterized the mixed motive defense in the following manner:

> A defendant need not admit a discriminatory motive to assert a mixed-motives defense. Indeed, the burden is on the plaintiff to establish that the defendant had a discriminatory motive; a defendant need not admit it, even in the alternative. If a plaintiff does succeed in presenting evidence to prove that the

impermissible reason was at least a motivating factor for the adverse employment action, the defendant can respond by arguing that the plaintiff has failed to prove that the impermissible reason was even a motivating factor, or by proving that the defendant would have taken the same action for a permissible reason alone, or by pursuing both tactics. The same occurrences can be material to either or both.

*Pulliam v. Tallapoosa County Jail,* 185 F.3d 1182, 1186 (11th Cir.1999).

■ In the instant case, Defendant maintains that Roberts was fired for disclosing confidential information to Thomas. Plaintiff attempts to rebuff this by asserting that Rayonier should have confirmed the actual disclosure of the confidential information. However, Plaintiff's assertion misses the mark. The critical inquiry is whether Rayonier believed that Plaintiff provided confidential information to Thomas. Farmer relayed to O'Grady the subject of his conversation with Thomas and provided written confirmation of that conversation. After a meeting where Plaintiff was questioned regarding his discussions with Thomas, Rayonier elected to believe Farmer and terminated Plaintiff's employment.

Plaintiff seeks to impose a heightened burden upon Rayonier to discover the truth of the assertions made by Farmer to O'Grady. The caselaw is contrary to Plaintiff's position. *Elrod v. Sears, Roebuck and Company,* 939 F.2d 1466, 1470 (11th Cir.1991)("the inquiry of the ADEA is limited to whether [decision makers] *believed* that [the plaintiff] was guilty of harassment, and if so, whether this belief was the reason behind [the plaintiff's] discharge.")(emphasis in original); *Sweeney v. Alabama Alcoholic Beverage Control*

---

8. *Pennington v. City of Huntsville,* 261 F.3d 1262, 1269 (11th Cir.2001).

*Bd.,* 117 F.Supp.2d 1266, 1273 (M.D.Ala.2000)(stating "whether or not a plaintiff actually committed the work rule violations is immaterial on the issue of pretext. Rather, what is material is whether or not the employer believed the allegations to be true, not whether they were in fact true"); *Padron v. BellSouth Telecommunications, Inc.,* 196 F.Supp.2d 1250, 1258 (stating "BellSouth can fire its employees as long as its reason are not in violation of the law or a contract. BellSouth can fire an employee if it is mistaken about the misconduct it believes the employee committed"). Accordingly, this Court concludes Rayonier has carried its burden in a mixed-motive defense, and has established that Plaintiff's employment was terminated for a nondiscriminatory motive.

## B. ADA and FCRA Discrimination Claims Counts

■ The ADA prohibits employment discrimination against a "qualified individual with a disability because of the disability of such individual. . . ." 42 U.S.C. § 12112(a). In order to show a *prima facie* case of employment discrimination under the ADA, a plaintiff must demonstrate: 1) that he has a disability, or was perceived to have a disability; 2) that he is qualified for the position with or without reasonable accommodations; and 3) that he was unlawfully discriminated against due to the disability. *Rossbach v. City of Miami,* 03–13348, 371 F.3d 1354, 1358–59 (11th Cir.2004); *Carruthers v. BSA Advertising, Inc.,* 357 F.3d 1213, 1215 (11th Cir. 2004).

The term discriminate includes "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual *with a disability* who is an applicant or employee, unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business of such covered entity. . . ." 42 U.S.C. § 12112(b)(5)(emphasis added). The term disability is defined "with respect to an individual—(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(2).

■ The ADA defines "disability" as, "with respect to an individual [,] . . . a physical . . . impairment that substantially limits one or more major life activities of such individual." 42 U.S.C. § 12102(2)(A). There is a three-part test for applying this definition. *Bragdon v. Abbott,* 524 U.S. 624, 631, 118 S.Ct. 2196, 141 L.Ed.2d 540 (1998). This Court must determine first whether Plaintiff has an "impairment," next whether the activity on which he relies is a "major life activity," and, if so, whether his impairment "substantially limits" that major life activity. *Id.* "[T]hese terms need to be interpreted strictly to create a demanding standard for qualifying as disabled." *Toyota Motor Mfg., Ky., Inc. v. Williams,* 534 U.S. 184, 197, 122 S.Ct. 681, 151 L.Ed.2d 615 (2002). In enacting the ADA, Congress expressly estimated that "some 43,000,000 Americans have one or more physical or mental disabilities." 42 U.S.C. § 12101(a)(1). "When one compares this estimate to the countless aches and pains from which most of us unhappily suffer, one can easily see that a lenient interpretation would expand the class of disabled persons far beyond Congress's expectation." *Waldrip v. General Electric Co.,* 325 F.3d 652, 654 (5th Cir.2003)(citing *Toyota,* 534 U.S. at 197, 122 S.Ct. 681; *Sutton v. United Air Lines, Inc.,* 527 U.S. 471, 487, 119 S.Ct. 2139, 144 L.Ed.2d 450 (1999)). This Court must,

therefore, conduct a carefully individualized inquiry into Plaintiff's claimed disability to fulfill its "statutory obligation to determine the existence of disabilities on a case-by-case basis." *Albertson's, Inc. v. Kirkingburg,* 527 U.S. 555, 566, 119 S.Ct. 2162, 144 L.Ed.2d 518 (1999).

█ Plaintiff claims that his disabilities are alcoholism and depression. Defendant concedes that both conditions can be termed impairments, but they do not constitute a *per se* disability. (Dkt. 52, pg. 18). This Court must, therefore, determine whether Plaintiff's impairments affect a major life activity. The Supreme Court's general standard for a "major life activity," has been defined as "those activities that are of central importance to daily life," *Toyota,* 534 U.S. at 197, 122 S.Ct. 681, and activities that "are central to the life process itself," *Bragdon,* 524 U.S. at 638.

> The substantial limit requirement is the linchpin of § 12102(2)(A). Without it, the ADA would cover any minor impairment that might tangentially affect major life activities such as breathing, eating, and walking. For this reason, an impairment must not just limit or affect, but must substantially limit a major life activity.

*Waldrip,* 325 F.3d at 655 (*citing Albertson's,* 527 U.S. at 565, 119 S.Ct. 2162 (contrasting "mere difference" with a "significant restriction")). The effects of a physical or mental impairment must be severe to qualify as a disability under the ADA. *See Toyota,* 534 U.S. at 196, 122 S.Ct. 681 (" 'Substantially' in the phrase 'substantially limits' suggests 'considerable' or 'to a large degree' "). "The particularized inquiry mandated by the ADA centers on substantial limitation of major life activities, not mere impairment." *Ivy*

*v. Jones,* 192 F.3d 514, 516 (5th Cir.1999). In determining whether an individual is substantially limited in a major life activity, the Code of Federal Regulations instruct that the following factors should be considered: the nature and severity of the impairment; the duration or expected duration of the impairment; and the permanent or long-term impact of or resulting from the impairment. *See* 29 CFR § 1630.2(j)(2)(i)-(iii).[9]

With the above standard as a guide, this Court concludes that Plaintiff has failed to demonstrate that his depression or alcoholism substantially impaired any major life activity. Plaintiff provides the following justification for how the impairments affected his life: he was late for meetings at work, particularly those in the morning; he had alcohol on his breath, which created credibility issues; and the inability to professionally execute his responsibilities at Rayonier. Furthermore, Plaintiff maintains that the impairments "causes major limitations on plaintiff's ability as a family member, his personal feelings, his mental health, his ability to socialize, and his sleeping patterns." (Dkt. 72, pg. 17). These claims are insufficient. *See Burch v. Coca–Cola Co.,* 119 F.3d 305, 316 (5th Cir.1997). This conclusion is buttressed by the fact that Plaintiff was able to work without incident for over a year following the signing of the last chance agreement. Accordingly, this Court concludes that Plaintiff has failed to demonstrate that he suffered from disabilities as they are defined under the ADA.

█ Plaintiff, alternatively, argues that he qualifies within the second definition of disabled in the ADA. Plaintiff avers that under subsection (B), he had a record of impairment with Defendant, and as such is

---

9. The CFR is beneficial for guidance in analyzing such claims but is not controlling on this Court. *Toyota,* 534 U.S. at 194, 122 S.Ct. 681.

disabled within the meaning of the ADA. "Although the ADA does not define the terms 'record of such an impairment,' courts and regulations agree that a 'record of such impairment' means having a history of impairment that substantially limits a major life activity." *Goldsmith v. Jackson Memorial Hospital Public Health Trust,* 33 F.Supp.2d 1336, 1341 (S.D.Fla.1998) (citations omitted). The purpose of this portion of the definition " 'is to ensure that people are not discriminated against because of a history of disability.' " *Couts v. Beaulieu Group, LLC,* 288 F.Supp.2d 1292, 1305 (N.D.Ga.2003)(citing *Horwitz v. L. & J.G. Stickley, Inc.,* 20 Fed.Appx. 76, 80, 2001 WL 1220511 (2d Cir.2001)). "A person has a record of a disability if a record relied upon by an employer indicates that the individual has or had a substantially limiting impairment." *Id.* (internal citations omitted). The record of impairment standard "is satisfied only if [the plaintiff] actually suffered a physical impairment that substantially limited one or more of [the plaintiff's] major life activities." *Hilburn v. Murata Electronics North America, Inc.,* 181 F.3d 1220, 1229 (11th Cir.1999). Plaintiff, in this instance, has again failed to meet this required burden. Plaintiff has not demonstrated that he has impairments which limit major life activities. Therefore, Plaintiff has not established disability under a record of impairment theory.

 Plaintiff, finally, argues that he qualifies within the third definition of disabled in the ADA. Plaintiff avers that under subsection (C), he was regarded by Defendant as disabled, and as such is disabled within the meaning of the ADA. In the ADA the term disability is defined three ways, the third of which concerns "(C) being regarded as having such an impairment." 42 U.S.C. § 12102(2).

There are two apparent ways in which individuals may fall within this statutory definition: (1) a covered entity mistakenly believes that a person has a physical impairment that substantially limits one or more major life activities, or (2) a covered entity mistakenly believes that an actual, nonlimiting impairment substantially limits one or more major life activities. In both cases, it is necessary that a covered entity entertain misperceptions about the individual—it must believe either that one has a substantially limiting impairment that one does not have or that one has a substantial limiting impairment when, in fact, the impairment is not so limiting.

*Sutton v. United Air Lines, Inc.,* 527 U.S. 471, 489, 119 S.Ct. 2139, 144 L.Ed.2d 450 (1999).

In order to establish that a plaintiff is disabled under (C) of the ADA, that plaintiff "must produce evidence showing that [the defendant] regarded him as being significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes." *Witter v. Delta Air Lines, Inc.,* 138 F.3d 1366, 1370 (11th Cir.1998). Moreover, "[w]here a 'defendant's recognition of plaintiff's limitations was not an erroneous perception, but instead was a recognition of a fact,' 'a finding that plaintiff was regarded as disabled and, therefore, [is] entitled to the protections of the ADA[,] is inappropriate.' " *Hilburn,* 181 F.3d at 1230. "Thus, to be regarded as substantially limited in the major life activity of working, one must be regarded as precluded from more than a particular job. ('The inability to perform a single, particular job does not constitute a substantial limitation in the major life activity of working.')." *Murphy v. United Parcel Service, Inc.,* 527 U.S. 516, 523, 119 S.Ct. 2133, 144 L.Ed.2d 484 (1999) (citations omitted).

Finally, "as with real impairments, courts have held that a perceived impairment must be substantially limiting and significant." *Gordon v. E.L. Hamm & Associates, Inc.,* 100 F.3d 907, 913 (11th Cir.1996) (citations omitted); *See Standard v. A.B.E.L. Services, Inc.,* 161 F.3d 1318, 1327 (11th Cir.1998). "In this contest, then, a significant impairment is one that is viewed by the employer as *generally foreclosing the type of employment involved, not just a narrow range of job tasks." Id.* (citations omitted, emphasis added).

In this case, Plaintiff has presented no evidence that Defendant treated Plaintiff as if he labored under a substantially limiting impairment, accordingly this Court concludes that summary judgment is due to be granted. Moreover, this Court need not address Plaintiff's motion for partial summary judgment since the above conclusions were reached.

Accordingly, it is **ORDERED**:

1. Defendant's Motion for Summary Judgment is **GRANTED**.

2. Defendant's request for oral argument and attorneys' fees is **DENIED**.

3. Plaintiff's Motion for Partial Summary Judgment and Request for Oral Argument (Dkt. 54) is **DENIED**.

4. The Clerk is directed to **ENTER** judgment in favor of Defendants and to CLOSE this case.